Leticia **TALAMANTES–PENALVER,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 94–1238.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1994.

Decided March 30, 1995.

Karen F. Ellingson, St. Paul, MN, argued, for appellant.

Richard M. Evans, Washington, DC, argued, for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Leticia Talamantes–Penalver petitions for review of the decision of the Board of Immigration Appeals (BIA) dismissing her appeal because it was not filed within the time required by an Immigration and Naturalization Service (INS) regulation. We deny the petition for review.

Talamantes–Penalver entered the United States without inspection in 1985. She voluntarily presented herself to United States Border Patrol agents in Grand Forks, North Dakota, in September 1991. She has not been detained by the INS, and has been represented by counsel at all stages of these proceedings.

After an initial deportation hearing, an immigration judge (IJ) found Talamantes–Penalver deportable, but she applied for a discretionary suspension of her deportation under 8 U.S.C. § 1254 (1988 & Supp. V 1993). The IJ denied the application in an oral decision on February 22, 1993, at the conclusion of a hearing in Bloomington, Minnesota. In both his oral decision and his memorandum of oral decision, the IJ stated that any notice of appeal would have to be filed in his office in Chicago on or before March 4, 1993.

A notice of appeal from the decision of an IJ must be accompanied by a receipt issued by an INS office for the $110 filing fee. The IJ's office will not accept the fee. *See* 8 C.F.R. § 103.7 (1994). Talamantes–Penalver's attorney paid the fee and obtained the required receipt at the Bloomington, Minnesota, INS office on February 24, 1993, but she did not mail the receipt and notice of appeal until March 1. The IJ's office did not receive Talamantes–Penalver's notice of appeal until March 5, 1993.

Talamantes–Penalver argues, *inter alia*, that the regulation requiring her notice of appeal to be filed within ten days of the IJ's decision, 8 C.F.R. § 3.38(b) (1994),[1] places

---

1. Section 3.38(b) provides, in relevant part, as follows:

The notice of appeal of the decision shall be filed with the Office of the Immigration Judge

such a stringent time limit on her right to appeal that it violates the Due Process Clause, U.S. Const. amend. V.[2] We disagree.

▮▮ The Due Process Clause requires the government to provide a person subject to deportation with a meaningful opportunity to be heard. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). The Due Process Clause, however, does not require the government to provide an alien with an appellate proceeding after the meaningful opportunity to be heard has been provided in the form of a deportation hearing. *Cf. Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) (restating century-old rule that Constitution does not guarantee right to appeal criminal conviction) (citing *McKane v. Durston*, 153 U.S. 684, 687–88, 14 S.Ct. 913, 915, 38 L.Ed. 867 (1894)).

▮▮ Once the right to appeal is created, however, the procedures employed on appeal must provide appellants with due process of law. *Evitts*, 469 U.S. at 393, 105 S.Ct. at 834 (holding that criminal defendants are entitled to due process rights on appeal even though state need not provide appeal process); *see also de la Llana–Castellon v. INS*, 16 F.3d 1093, 1099 (10th Cir.1994) (holding BIA violated appellant's right to due process by taking administrative notice of facts without advance notice to appellant or opportunity to be heard). Talamantes–Penalver argues that the ten-day filing deadline is unconstitutional as applied because as a practical matter it can result in aliens like herself in "remote"

locations being denied their rights to administrative appeals even when "reasonable efforts have been made ... to meet filing deadlines." Petitioner's Brief at 8. This arbitrary and unfair procedure, Talamantes–Penalver argues, violates the Due Process Clause. We conclude, however, that the ten-day filing deadline comports with due process, even as applied to aliens living in remote locations who make reasonable efforts to comply with the regulation.

▮▮ In evaluating Talamantes–Penalver's due process claim, we consider, as Talamantes–Penalver urges us to do, the factors set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The *Mathews* factors include the individual interest at stake; the risk of erroneous deprivation of the interest through the use of the procedure in question; the value of different or supplemental procedural safeguards; and the interest of the government in using the current procedures, considering the burdens and costs of implementing a different procedure. *Id.* at 335, 96 S.Ct. at 903.

The Ninth Circuit has considered § 3.38(b) in light of the *Mathews* factors and has held it to be constitutionally deficient in the circumstances before the court in *Gonzalez–Julio v. INS*, 34 F.3d 820, 825 (9th Cir.1994). *Gonzalez–Julio*, however, is factually distinguishable from this case. Gonzalez–Julio had to send his notice of appeal from Honolulu, Hawaii, to San Diego, California. In this case, Talamantes–Penalver's notice was mailed from St. Paul, Minnesota, to Chicago,

---

having administrative control over the Record of Proceeding within ten (10) calendar days after service of the decision. Time will be 13 days if mailed.

The last sentence of the foregoing quotation is the source of the ambiguity mentioned *infra* note 2.

2. Talamantes–Penalver also argues that section 8 C.F.R. § 3.38(b) is ambiguous and can be read to allow a thirteen-day filing period when the notice of appeal is mailed. This Court recently has held § 3.38(b) could be read that way. *Atiqullah v. INS*, 39 F.3d 896, 898 (8th Cir.1994) (per curiam). Atiqullah in fact read the ambiguous language as allowing him thirteen days to file a notice of appeal, and he relied on that reading of the regulation; the Court held that such "unique circumstances," together with others, justified his failure to comply with the ten-day filing re-

quirement the INS intended the regulation to establish. *Id.* At oral argument in this case, counsel conceded that Talamantes–Penalver was aware that the regulation required the notice to be filed in the IJ's office within ten days of the IJ's decision. Talamantes–Penalver does not claim that she was misled by the ambiguity in the regulation. Thus her appeal does not present unique circumstances that would excuse her late filing.

Talamantes–Penalver's briefs also refer in passing to a violation of her equal protection rights. As her briefs do not make any substantive argument separate from her due process arguments, we conclude that either she has not asserted an equal protection claim at all or, if she has, it is impossible to discern the basis of the claim. We therefore address only her due process claim.

Illinois. The ten-day filing period arguably could be unconstitutional as applied to a petitioner in Hawaii, a somewhat "remote" location, but constitutional as applied to a petitioner in a location not so remote from the place where the notice of appeal is to be filed.

More importantly, we are unpersuaded by the Ninth Circuit's analysis of the *Mathews* factors. While we agree that an alien's interest in appealing the deportation order is a "strong one," *id.* at 823, we cannot agree with our sister circuit's analysis of the other factors.

First, the risk of erroneous deprivation resulting from the ten-day appeal period is not high. While the Ninth Circuit stated that the risk of delay in mail delivery is not within the appellant's control, *id.*, we note that regular mail service is not the only option for delivery. The potential delays of regular mail service are commonly known. Talamantes–Penalver could have filed her notice of appeal by using United States Postal Service Express Mail or any number of commercial services that guarantee overnight delivery. All Talamantes–Penalver had to do within the ten-day period was (1) pay the $110 filing fee at an INS office and obtain a receipt, (2) fill out a one-page INS form (EOIR–26), and (3) make sure that the receipt and form were delivered to the IJ's office in Chicago. In this case, the receipt was obtained on Wednesday, February 24. The form and receipt could have been mailed that day, allowing eight days for delivery by regular mail. But even assuming it was "reasonable" to wait until the following Monday, March 1, to send the receipt and notice to Chicago, as Talamantes–Penalver in fact did, the receipt and notice would have reached the IJ's office with two days to spare had Talamantes–Penalver used an overnight mail or delivery service. In other words, Talamantes–Penalver assumed the risk of

regular mail delivery; the method by which a notice of appeal is sent is entirely within the control of the appellant.

Second, as to the factor concerning different or supplemental procedural safeguards, the Ninth Circuit suggested that the INS could alleviate the stringency of the ten-day filing deadline for residents of Hawaii by allowing appellants to file their notices of appeal with a local INS office at the same time the filing fee is paid. *Id.* at 824. This Court recently held that the timely filing of a notice of appeal in a local INS office pursuant to 8 C.F.R. § 3.3(a) (1994) prevented the BIA from dismissing an appeal from an immigration judge's order as untimely filed. *Atiqullah v. INS*, 39 F.3d 896, 898 (8th Cir. 1994) (per curiam). Talamantes–Penalver, however, did not attempt to file her notice of appeal at the local INS office in Bloomington. Had she done so, her appeal may have been timely.[3] *See id.*

Talamantes–Penalver in fact does not argue that local filing should be available as an alternative. Instead, she suggests that the INS should consider notices of appeal timely filed if postmarked within the ten-day filing period. A "postmark rule," however, would not give sufficient notice to the IJ or the INS that a deportation order is being appealed, as a notice properly postmarked (and thus deemed filed) might never reach its destination. As discussed above, the delivery method is within the control of the appellant. All the appellant need do is to effect delivery of the notice of appeal to the IJ's office within the time provided. A number of speedy and reliable services are available as alternatives to regular mail. These alternatives are adequate to protect the interest of aliens subject to deportation orders in perfecting a timely appeal from the decision of the IJ, and there

---

**3.** We note that 8 C.F.R. § 3.38(b), the regulation that applies specifically to appeals to the BIA from orders of immigration judges, requires the notice of appeal to be filed in the "Office of the Immigration Judge having administrative control over the Record of Proceeding...." We believe it would be prudent for aliens seeking review of deportation orders to adhere to this specific regulation rather than to rely on § 3.3(a), which concerns appeals to the BIA both from decisions of immigration judges and from decisions of service officers. It is possible to read § 3.3(a) as authorizing the filing of the notice of appeal in the appellant's local INS office only when the appeal is from the decision of a service officer, and not when the appeal is from the decision of an immigration judge. Other circuits, unlike our circuit in *Atiqullah* and the Ninth Circuit in *Vlaicu v. INS*, 998 F.2d 758, 760 (9th Cir.1993), may give § 3.3(a) this more restrictive reading.

is no need for different or supplemental procedural safeguards.

Third, the government's interest served by the § 3.38(b) filing deadline is significant. By limiting the time for filing appeals, the government is able to bring litigation to an end. *See Gonzalez–Julio,* 34 F.3d at 824. The government also can determine with certainty when an alien's right to appeal is cut off and the IJ's deportation order is conclusive. Enforcement of this nation's immigration laws is enhanced by the speedy adjudication of cases and the prompt deportation of offenders. Talamantes–Penalver argues that adopting a postmark rule would not result in any "significant fiscal or administrative burdens" on the agency. Petitioner's Brief at 8. We are not persuaded that this claim is accurate. It seems more likely to us that a postmark rule would require the agency to spend additional resources on the task of determining when it can act on an IJ's deportation order. In any event, cost considerations aside, it is not the province of the judiciary to dictate to an administrative agency the nuts and bolts of what constitutes a "filing."

Having considered the *Mathews* factors, we conclude that Talamantes–Penalver's due process claim lacks merit. Because Talamantes–Penalver did not file her notice of appeal on or before March 4, 1991, the notice of appeal was untimely, and the BIA was without jurisdiction to hear her appeal. *See Atiqullah v. INS,* 39 F.3d at 898 (noting that time limit for filing notice of appeal is generally "mandatory and jurisdictional"); *see also Matter of Escobar,* 18 I. & N. Dec. 412, 414 (B.I.A.1983) (exercising jurisdiction over appeal, having found notice was timely filed). The BIA therefore properly dismissed Talamantes–Penalver's appeal, and we deny her petition for review.