ZHONG GUANG SUN, Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Respondent.

Docket No. 02–4592.

United States Court of Appeals, Second Circuit.

Argued: May 13, 2005.

Decided: Aug. 25, 2005.

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

George S. Cardona, Chief Assistant United States Attorney for the Central District of California (Debra W. Yang, United States Attorney, of counsel), Los Angeles, CA, for Respondent.

Before: FEINBERG, CARDAMONE, and SACK, Circuit Judges.

SACK, Circuit Judge.

The petitioner, Zhong Guang Sun, seeks review of the denial by the Board of Immigration Appeals ("BIA") of his motion to reconsider its dismissal of his appeal from the decision of an immigration judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The petition presents the issue whether the BIA abused its discretion when it denied Sun's motion to reconsider its dismissal of his appeal on the grounds that the notice was untimely, where the petitioner had sent the notice of appeal from New York City to the BIA in Falls Church, Virginia, by Airborne Express overnight delivery to arrive on the date of the deadline, and where the petitioner submitted evidence—including a receipt and a letter from Airborne Express—establishing that Airborne Express had guaranteed delivery of the notice on the date of the deadline, but as a result of its error, had delivered the notice five days late.

Because we conclude that the BIA erred in indicating that it was unable under any circumstance including these to hear an untimely appeal, we grant the petition, vacate the order, and remand Sun's case to the BIA for further proceedings. In doing so, we imply no view as to the merits of the petitioner's application for asylum.

## BACKGROUND

Zhong Guang Sun, a citizen of China, entered the United States unlawfully in April 2001. Several months thereafter, he applied for asylum, withholding of removal, and relief pursuant to the CAT based on his opposition to China's coercive family planning policies. At the close of a hearing on March 25, 2002, an IJ denied the petitioner's application and notified him that, should he choose to appeal, the deadline for filing his notice of appeal was thirty days thereafter: April 24, 2002.

On April 23, 2002, the day before the deadline, the petitioner's lawyer sent the petitioner's notice of appeal for overnight delivery via Airborne Express [1] from New York City to Falls Church, Virginia, to arrive by noon on April 24, 2002.[2] As the result of an acknowledged error by Airborne Express, however, the notice of appeal did not arrive at the offices of the BIA until April 29, 2002, five days late.[3]

1. After the events in issue, Airborne Express "merge[d] with DHL Worldwide Express Inc., a unit of Deutsche Post AG of Bonn." "Transportation Brief—Airborne Inc. Shareholders Approve Merger With DHL Worldwide Express," *Wall Street Journal*, Aug. 15, 2003, at B7.

2. Because of the distance between the petitioner and his counsel, in New York, and the BIA, in suburban Washington, D.C., hand delivery of the notice of appeal to the BIA does not appear to have been a ready alternative.

3. The petitioner submitted to the BIA a letter addressed to his lawyer from a customer service agent at Airborne Express, dated May 23, 2002, that states:

> Airborne Express picked up the above-mentioned shipment on 04/23/02. It was scheduled to be delivered on 04/24/02 by noon.

> Unfortunately, your package was delayed in transit due to an Airborne error and was finally delivered on 04/29/02. Please note that it is our intent to deliver 100 percent satisfaction every time we service our customers.

> We do apologize for any inconvenience this may have caused you and your client. We hope that all future shipments will meet with your complete satisfaction.

Letter from M. Casimir, Airborne Express, to Ivan Pong, Law Offices of Yee Ling Poon (May 23, 2002). The government does not contest the petitioner's assertion that his notice of appeal was sent in the manner he describes or that the delay resulted from Airborne Express's error.

On May 10, 2002, the BIA, in a per curiam order, dismissed the petitioner's appeal.

> The appeal is untimely. A Notice of Appeal ... must be filed within 30 calendar days of an Immigration Judge's oral decision or the mailing of a written decision unless the last day falls on a weekend or legal holiday, in which case the appeal must be received no later than the next working day. *See* 8 C.F.R. § [ ] 3.38(b),(c). In the instant case, the Immigration Judge's decision was rendered orally on March 25, 2002. The appeal was accordingly due on or before April 24, 2002. The record reflects, however, that the Notice of Appeal was filed with the Board of Immigration Appeals on April 29, 2002. We find that the appeal is untimely.

*In re Zhong Guang Sun*, No. A95–161–938, slip op. at 1 (B.I.A. May 10, 2002) (per curiam).[4]

On June 5, 2002, the petitioner filed with the BIA a timely motion to reconsider. On October 10, 2002, in another per curiam order, the agency acknowledged the petitioner's request that the BIA "not penalize [him] for the Airborne error which caused the delay in the submission of [his] appeal." *In re Zhong Guang Sun*, No. A95–161–938, slip op. at 1 (B.I.A. Oct. 10, 2002) (per curiam). It denied the motion, however, stating:

> We note that a notice of appeal must be received at the Board within 30 days from the date of the Immigration Judge's decision (or mailing date of the decision if later). *See* 8 C.F.R. § 3.38(b)[.] A date-stamp is placed on all filings received at the Clerk's Office, and is controlling in the computation of timely filing. *We note also, that the regulations set strict deadlines for the filing of an appeal, and the Board does not have the authority to extend the time in which to file a Notice of Appeal. See* 8 C.F.R. § 3.38(b).
>
> Accordingly, the motion to reconsider is denied.

*Id.* (emphasis added).

Sun petitions this Court for review of the BIA's October 10 order. Although he also asserts in his petition that he established a well-founded fear of persecution entitling him to asylum and withholding of removal, our review of the BIA's order is limited to the question whether the BIA abused its discretion in denying, as barred by applicable regulations containing time limitations, Sun's motion to reconsider its dismissal of his appeal.

## DISCUSSION

### I. Standard of Review

■ We review for abuse of discretion the BIA's denial of a motion to reconsider. *See Salta v. INS*, 314 F.3d 1076, 1078 (9th Cir.2002); *Mardones v. McElroy*, 197 F.3d 619, 624 (2d Cir.1999) (applying the abuse of discretion standard to a motion to reopen). In doing so, "[w]e review the BIA's underlying conclusions of

---

4. The relevant sections of the federal regulations referenced in the BIA's opinion, which have since been renumbered, state:

(b) The Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge (Form EOIR–26) shall be filed directly with the Board of Immigration Appeals within 30 calendar days after the *stating of an Immigration Judge's oral decision* or the mailing of an Immigration Judge's written decision. If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day. A Notice of Appeal (Form EOIR–26) may not be filed by any party who has waived appeal.

(c) The date of filing of the Notice of Appeal (Form EOIR–26) shall be the date the *Notice is received by the Board.*

8 C.F.R. § 1003.38(b), (c).

law *de novo*, with the caveat that the BIA's interpretations of ambiguous provisions of the [Immigration and Nationality Act] are owed substantial deference unless 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); other citations omitted). Thus, we will uphold the decision if it is not "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,'" *Fuentes–Argueta v. INS*, 101 F.3d 867, 870 (2d Cir. 1996) (per curiam) (quoting *Vargas v. INS*, 938 F.2d 358, 360 (2d Cir.1991)).

## II. Untimely BIA Appeals

■ The petitioner first argues that his notice of appeal was timely filed by reference to Federal Rule of Appellate Procedure 25(c), which provides that "[s]ervice by mail or by commercial carrier is complete on mailing or delivery to the carrier." Fed. R.App. P. 25(c)(4). But this Rule simply does not apply to the BIA. Even if it did, the Rule also makes clear that "filing"—as opposed to service—of papers other than briefs and appendices, *see* Fed. R.App. P. 25(a)(2)(B), "is not timely unless the clerk *receives* the papers within the time fixed for filing," Fed. R.App. P. 25(a)(2)(A) (emphasis added). The BIA regulations mirror Rule 25(a)(2), stating that the filing date for an appeal to the BIA is "the date the Notice is *received* by the [BIA]." 8 C.F.R. § 1003.38(c) (emphasis added).[5] The petitioner's argument on this score is thus entirely without merit.

■ The petitioner also argues that courts have granted petitions for review where a delay in an appeal to the BIA arose as a result of unique circumstances beyond the petitioner's control. This, he says, is such a case. We find this approach more persuasive. We think that while under normal circumstances the BIA cannot hear late-filed appeals, it may hear such appeals in unique or extraordinary circumstances.

Although courts that have considered the time limit within which a person is required to file a notice of appeal with the BIA have generally described the requirement as mandatory and jurisdictional, *see, e.g., Anssari–Gharachedaghy v. INS*, 246 F.3d 512, 514 (6th Cir.2000); *Atiqullah v. INS*, 39 F.3d 896, 898 (8th Cir.1994) (per curiam); *Hernandez–Rivera v. INS*, 630 F.2d 1352, 1354 (9th Cir.1980), those courts have nonetheless recognized that there may be exceptions to that rule in unique or extraordinary cases, *see, e.g., Anssari–Gharachedaghy*, 246 F.3d at 514–15; *Atiqullah*, 39 F.3d at 898; *Hernandez–Rivera*, 630 F.2d at 1354–55. In *Hernandez–Rivera*, for example, the Ninth Circuit concluded that "[d]espite the note of finality sounded by [the 'mandatory and jurisdictional'] principle," the deadline for BIA appeals "is not inflexible" and "[u]nder certain unique circumstances, an appellate tribunal may have jurisdiction to hear an appeal that was not filed within the prescribed time limits." *Id.* at 1354.

The government points out, though, that these cases involve some form of "official

---

5. We noted at oral argument the irony that the government had filed its brief in this appeal, as the petitioner filed his notice of appeal (and as lawyers customarily do), by sending it via an overnight delivery service (Federal Express) the night before the deadline for filing. We did recognize, however, that the rule applicable to the filing of briefs with the clerk of court is quite different from that applicable to the petitioner's notice. *See* Fed. R.App. P. 25(a)(2)(B) ("A brief ... is timely filed ... if on or before the last day for filing, it is ... dispatched to a third-party commercial carrier for delivery to the clerk within 3 calendar days.").

misleading" of the filer leading to the delay. In *Hernandez–Rivera*, the IJ himself inadvertently misled the petitioner into thinking that the IJ could grant a fifteen-day extension for his appeal. *Id.* at 1353, 1355. The Ninth Circuit noted that "[i]n such unique circumstances, where there has been official misleading as to the time within which to file a notice of appeal, the late notice may be deemed to have been constructively filed within the jurisdictional time limits." *Id.* at 1355. Similarly, in *Vlaicu v. INS*, 998 F.2d 758 (9th Cir.1993) (per curiam), the Ninth Circuit concluded that the BIA may have jurisdiction to hear an untimely appeal where the appellant was " 'misled by the words or conduct of the court,' " *id.* at 760 (quoting *Hernandez–Rivera*, 630 F.2d at 1354); *see also Shamsi v. INS*, 998 F.2d 761, 763 (9th Cir.1993) (per curiam).

The Eighth Circuit in *Atiqullah* also noted that "[g]enerally, the time limit for filing a notice of appeal to the BIA is mandatory and jurisdictional." *Atiqullah*, 39 F.3d at 898. It concluded, however, that because the regulation defining the appeals deadline was ambiguous, "unique circumstances" existed such that the petitioner's late filing should be excused. *Id.* Such imprecise draftsmanship may, as the government suggests, be viewed as a form of "official misleading." Resp't's Br. at 16.

The government contends that "[t]hose cases that have crafted an exception to the regulations to require the BIA to accept late-filed notices of appeal have done so only where government action has prevented timely filing." Resp't's Br. at 7. But while the case law has indeed largely been decided in that context, we do not read it to suggest that "official misleading" is the *only* circumstance sufficiently unique or extraordinary to justify relief from the operation of BIA appeals deadlines.

In the Ninth Circuit's recent decision in *Oh v. Gonzales*, 406 F.3d 611 (9th Cir. May 2, 2005),[6] the facts of which are strikingly similar to those of the appeal before us, the court concluded that the BIA's deadline for appeals is subject to exceptions in "rare circumstances" and that a petitioner's use of Airborne Express "would appear to qualify [the petitioner] for relief from late filing as a unique or rare circumstance—or at least to be considered for such relief, with some reasoned explanation should the BIA reject [the petitioner's] proffered excuse," *id.* at 613.[7]

The *Oh* approach is consistent with the cases discussed above that recognize exceptions under "unique or extraordinary" circumstances. In *Anssari–Gharachedaghy*, for example, a case that the government cites for the proposition that "other

---

**6.** The government brought this case to our attention after briefing but prior to argument in a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j).

It may be true that, in the most general sense, the Ninth Circuit takes a more relaxed view of deadlines to appeal than do we. *Compare Pincay v. Andrews*, 389 F.3d 853, 855, 860 (9th Cir.2004) (en banc) (affirming district court's extension of deadline to appeal based on paralegal's error), *cert. denied,* — U.S. —, 125 S.Ct. 1726, 161 L.Ed.2d 602 (2005), *with Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 370 (2d Cir.2003) (reversing district court's extension of deadline to

appeal based upon paralegal's error), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105, 124 S.Ct. 1047, 157 L.Ed.2d 890 (2004).

**7.** The *Oh* court also quotes *Socop–Gonzalez v. INS*, 272 F.3d 1176 (9th Cir.2001) (en banc), as follows: " 'If a time limit is jurisdictional, it is not subject to the defenses of waiver, equitable tolling, or equitable estoppel, *although there may still be exceptions based on unique circumstances.*' " 406 F.3d at 613 (quoting *Socop–Gonzalez*, 272 F.3d at 1188) (emphasis added in *Oh*; internal citation and quotation marks omitted in *Oh*).

circuits have expressly rejected similar claims that delays in delivery by the Postal Service should excuse late filing," Resp't's Br. at 17, the Sixth Circuit suggested that some delivery delays might be sufficiently extraordinary to allow the BIA to hear an untimely appeal, *see Anssari–Gharachedaghy*, 246 F.3d at 514–15. The court noted that "some courts, including the Sixth Circuit, have recognized that the [BIA] may have jurisdiction to hear an otherwise untimely appeal if a party has been 'misled by the words or conduct of the court,' *or if other 'extraordinary or unique circumstances' interfered with timely filing." Id.* (emphasis added; citations omitted). The court thus indicated that extraordinary circumstances might indeed extend beyond "official misleading," even though the circumstances of the case before it were not sufficiently "extraordinary" or "unique" to allow the BIA to hear an untimely appeal.

Specifically, regarding the issue of mail delays, the *Anssari–Gharachedaghy* court noted:

> In an affidavit supporting Anssari–Gharachedaghy's motion to reconsider the [BIA]'s dismissal of his appeal, his counsel states that United States Postal Service employees led him to believe that mailing the notice of appeal to the [BIA] via certified mail would ensure timely receipt of the notice. But, neither the Postal Service's provision of incorrect information nor its failure to deliver the notice on time constitutes an extraordinary circumstance that would justify in-

tervention by this court into the [BIA's] exercise of discretion.

*Id.* at 515. The court went on to quote a similar case from the Eighth Circuit:

> The potential delays of regular mail service are commonly known. [The petitioner] could have filed her notice of appeal by using United States Postal Service *Express Mail or any number of commercial services that guarantee overnight delivery . . . .* [The petitioner] assumed the risk of regular mail delivery; the method by which a notice of appeal is sent is entirely within the control of the appellant.

*Id.* (quoting *Talamantes–Penalver v. INS*, 51 F.3d 133, 136 (8th Cir.1995) (emphasis added; ellipsis in *Anssari–Gharachedaghy* ); *see also Talamantes–Penalver*, 51 F.3d at 136 (noting further that "[a] number of speedy and reliable services are available as alternatives to regular mail. These alternatives are adequate to protect the interest of aliens subject to deportation orders in perfecting a timely appeal from the decision of the IJ")).[8] The clear implication of both *Anssari–Gharachedaghy* and *Talamantes–Penalver* is that a delay in delivery by an express delivery service, in contrast to a delay in regular mail, could constitute extraordinary circumstances.

In addition to this judicial case law supporting an exception with respect to Sun's notice, there is in the BIA's own instructions notifying aliens that they must file Form EOIR–27 with the BIA if they wish to have counsel represent them, the state-

---

**8.** *Cf. Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, 808 F.2d 1249, 1253 (7th Cir.1987) (observing that "placing a critically important letter in the mail sometime on the day before Christmas with the expectation that it will arrive in Chicago in anywhere near the normal two to three days is, in our opinion, only arguably reasonable but certainly risky—especially at what everyone recognizes is the busiest mailing time of

the year" and dismissing the argument that certified mail is sufficient by concluding that "[c]ertified mail, return receipt requested, *in contrast to an overnight delivery service,* is designed only to furnish a sender of mail with proof of its delivery, and it is in return for this assurance, not a promise of expedited delivery, that certified mail is more costly." (emphasis added)).

ment: *"Use of an over-night courier service is strongly encouraged to ensure timely filing."* Notice to Alien and Alien's Attorney of Form EOIR–27 Requirement 1 (June 17, 2002) (emphasis in original). And the BIA's *Practice Manual,* which provides official guidance on filing procedures and requirements for practice before the BIA, "explicitly encourages aliens to use overnight delivery services to ensure prompt delivery." *Oh,* 406 F.3d at 613.[9]

We find the common-sense observation by the Ninth Circuit and the implicit assumption of both the Sixth and Eighth Circuits—as buttressed by the observations of the Seventh Circuit in a different context and the instructions of the BIA itself—that the way in which a petitioner may *insure* timely filing is to use an overnight service such as Airborne Express to be telling. It strongly suggests to us that the failure of such an effort to achieve timely filing may well, indeed, fall within the realm of the "extraordinary" if not the "unique."

In denying the petitioner's motion to reconsider in this case, the BIA did not acknowledge the existence of any basis on which the running of the limitation for filing a notice of appeal might be excused. It did no more than recite, instead, the regulation stating that such notices must be filed within thirty days. It thus clearly implied, if it did not state outright, that under *no* circumstances does the BIA have the ability to hear an untimely appeal.

■ For the foregoing reasons, we disagree with the BIA. We conclude that it erred in failing to consider whether Air-

borne Express's failure to deliver the petitioner's notice of appeal overnight, as promised, constituted "extraordinary or unique circumstances" such that the petitioner's appeal should have been heard, despite the untimeliness of the filing. Whatever our own views on the issue, our power with respect to the disposition of this petition is limited to correcting the BIA's "misconstruction of the jurisdictional nature of its own filing deadline." *Oh,* 406 F.3d at 613. To that end, the October 10, 2002, order of the BIA is vacated to permit it fully to reconsider whether, under the circumstances presented, it will hear the appeal from the IJ's decision in this case, "with some reasoned explanation should the BIA reject [Sun's] proffered excuse." *Id.*

### CONCLUSION

The petition is granted, the BIA's order is vacated, and the case is remanded for further proceedings as indicated in this opinion.

**9.** Because the petitioner here—unlike, it would appear, the petitioner in *Oh*—does not assert that his use of overnight express delivery to file his notice of appeal with the BIA

was based on the information contained in BIA material, we hesitate to characterize his defalcation as a result of "official misleading."