NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0301n.06
Filed: May 2, 2007

No. 05-3654

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| IBRAHIMA SIBY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, | ) | |
| Attorney-General of the United States | ) | |
| | ) | |
| Respondent. | ) | |

**BEFORE: SUHRHEINRICH and GIBBONS, Circuit Judges, and HEYBURN, Chief District Judge***

**John G. Heyburn II, Chief District Judge**. This case presents the question whether a twenty-one month delay by an overnight carrier in delivering a notice of appeal to the Board of Immigration Appeals ("the Board" or "BIA") constitutes "extraordinary circumstances" sufficient to waive the Board's usual strict deadlines. We find that it does not, and thus we AFFIRM the Board's decision.

I.

The facts presented here are relatively straightforward. Appellant Ibrahima Siby arrived in the United States in 1998, fleeing oppression in his home country of Mauritania. Siby filed an

_____

* The Honorable John G. Heyburn II, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

application for asylum. A hearing was held before an Immigration Judge ("IJ") on September 6, 2002, and Siby's application for asylum was denied. Siby's appeal of this decision was due by October 7, 2002.

On either October 3 or 4, 2002, Siby, via his attorney Ronald S. Salomon, mailed a notice of appeal to the Board via overnight Federal Express service. For unknown reasons, Federal Express did not deliver the notice of appeal until June 2004. The Board acknowledged receipt of the appeal on June 29, 2004, sending a receipt to Siby's attorney. Apparently, in the interim, neither Petitioner nor his counsel contacted Federal Express or the Board to inquire about the arrival of the notice of appeal or its progress with the Board. No document or motion was filed when Siby's attorney learned that the notice of appeal had been received roughly twenty-one months late.

On March 31, 2005, the Board denied Siby's appeal on the grounds that it was untimely. Appellant did not appeal that decision to this Court. On April 28, 2005, Siby did file a Motion to Reconsider with the Board, which the Board denied. The Board held that it did "not have the authority to extend the time in which to file a Notice of Appeal." Appellant appeals this decision by the Board.

II.

This Court has not to date identified the standard of review for cases involving the Board's dismissal of appeals on the grounds that such appeals were untimely. *See Malak v. Gonzales*, 419 F.3d 533, 534 (6th Cir. 2005); *Anssari-Gharachedaghy v. INS*, 246 F.3d 512, 514 (6th Cir. 2000). Congress's passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

"appears to make Board decisions regarding appeals of INS orders highly discretionary; given the current statutory language, review for abuse of discretion may be the most appropriate." *Anssari-Gharachedaghy*, 246 F.3d at 514. Both the *Malak* and *Anssari-Gharachedaghy* panels determined that the standard of review was irrelevant, because both petitioners' claims would have failed on either *de novo* or abuse of discretion review. *Malak*, 419 F.3d at 534; *Anssari-Gharachedaghy,* 246 F.3d at 514. The same is true here.

A Notice of Appeal is not considered filed until it is received by the Board; the "mailbox rule" does not apply to Board proceedings. *See* 8 C.F.R. § 1003.38(c) ("The date of filing of the Notice of Appeal (Form EOIR-26) shall be the date the Notice is received by the Board."). However, the Board may consider an untimely appeal if, for example, "extraordinary and unique circumstances interfered with timely filing." *Anssari-Gharachedaghy,* 246 F.3d at 515 (quotation omitted). Appellant argues that the circumstances causing his notice of appeal to be delivered roughly twenty-one months late were "extraordinary and unique," in that his counsel sent the notice of appeal via overnight Federal Express service.

This Court has affirmed the Board in two key cases involving mailing delays. In *Anssari-Gharachedaghy*, the petitioner's notice of appeal arrived one day late after he sent it by United States Postal Service Certified Mail service. 246 F.3d at 512. The Board refused to assert jurisdiction because the notice of appeal was untimely filed. *Id.* This Court agreed with other courts that the filing period for a notice of appeal is "mandatory and jurisdictional" and held that "the Board's decision refusing to assert jurisdiction in this case must be upheld." *Id.* at 514 (internal quotations

and citations omitted). That panel stated that "neither the Postal Service's provision of incorrect information [i.e. its claim that the document would be delivered in time] nor its failure to deliver the notice on time constitutes an extraordinary circumstance that would justify intervention by this court into the Board's exercise of discretion." *Id.* at 515. However, this Court did cite with approval the Eighth Circuit's decision in *Talamantes-Penalver v. INS*, 51 F.3d 133 (8th Cir. 1995), where the court analyzed similar circumstances and stated: "The potential delays of regular mail service are commonly known. Talamantes-Penalver could have filed her notice of appeal by using United States Postal Service Express Mail *or any number of commercial services that guarantee overnight delivery.*" *Id.* at 136 (emphasis added). This statement, in conjunction with this Court's analysis in *Anssari-Gharachedaghy*, suggests that although delays in *regular* mail could not be considered extraordinary, delays by a *commercial overnight delivery service* could be considered extraordinary. The *Anssari-Gharachedaghy* court did not explore this possibility further, however.

Our decision in *Malak*, however, more closely tracks the facts here. In *Malak*, the petitioner submitted a notice of appeal via United States Express Mail, but the document never arrived. *Malak*, 419 F.3d at 534. Malak's attorney called the Board roughly twenty-one months later to inquire about the status of the appeal, but the Board had not received it. *Id.* Malak and his attorney resubmitted the notice of appeal, but the Board dismissed Malak's appeal as untimely, noting that "Malak's failure to receive a receipt should have made him aware that the Board had not received his notice, and the almost two-year delay was 'simply too long.'" *Id.* The *Malak* court relied upon the *Anssari-Gharachedaghy* decision and affirmed the Board decision. *Id.* at 535. The court cited the BIA

Practice Manual, which makes clear that "[p]ostal or delivery delays do not affect existing deadlines" and that parties should anticipate delays "whether the filing is made through first class mail, priority mail, *or any overnight or other guaranteed delivery service*." *Id.* (emphasis added). *See also* BIA Practice Manual, Chapter 3.1(b)(iv). Our jurisprudence, therefore, instructs that mailing delays normally will not constitute "extraordinary circumstances" that would justify a waiver of the Board's time deadlines.

Appellant bases his case largely upon the Eighth Circuit's decision in *Zhong Guang Sun v. United States Dept. of Justice,* 421 F.3d 105 (8th Cir. 2005). In *Sun*, the petitioner sent a notice of appeal to the Board via Airborne Express overnight delivery, but as a result of an error by Airborne Express, the document arrived five days beyond the Board's thirty-day deadline for appeals. *Id.* at 106. The Board dismissed the appeal as untimely. *Id.* at 107. After analyzing the Board's own procedural documents and a variety of cases – including *Anssari-Gharachedaghy* – the Eighth Circuit stated in a key passage:

> We find the common-sense observation by the Ninth Circuit and the implicit assumption of both the Sixth and Eighth Circuits – as buttressed by the observations of the Seventh Circuit in a different context and the instructions of the BIA itself – that the way in which a petitioner may insure timely filing is to use an overnight service such as Airborne Express to be telling. It strongly suggests to us that the failure of such an effort to achieve timely filing may well, indeed, fall within the realm of the "extraordinary" if not the "unique."

*Id.* at 111.

*Sun* therefore suggests that the failure of an overnight delivery service could be considered an "extraordinary" circumstance warranting waiver of the Board's strict deadlines. However, there

are two key differences between this case and *Sun.* First, the delay between mailing and receipt in this case was unusually long, and much longer than the five days in *Sun*: twenty-one months. Second, and more importantly, neither Siby nor his counsel made any effort to contact Federal Express or the Board to ascertain the status of the appeal during those twenty-one months. Simply checking the tracking number on Federal Express's Web site would have revealed that the envelope had not been delivered. Furthermore, the Board routinely issues receipts when it receives notices of appeal. When no such receipt was received within even two weeks of the mailing, Siby's counsel should have known something was amiss.

This case may be one in which an alien, unfamiliar with the intricate procedures of the Board, was ill-served by his reliance on his attorney (who appears to have changed since the twenty-one month delay). Nevertheless, it cannot be said that the Board abused its discretion in denying a motion to reconsider a decision dismissing Siby's appeal based on lack of jurisdiction. Time limitations "are not simply technicalities. On the contrary, they have been long respected as fundamental to a well-ordered judicial system." *Meja Rodriguez v. Reno*, 178 F.3d 1139, 1145 (11th Cir. 1999), *cert. denied*, 531 U.S. 1010 (2000) (quoting *Board of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)). Twenty-one months is an extraordinarily long delay, but the fact of the delay and the desultory efforts of the Appellant and his attorney to follow up with the Board suggest that this case does not present the "extraordinary circumstances" necessary to overcome the Board's strict deadlines. This would be true whether we review the Board's decision on a *de novo* basis or using an abuse of discretion standard.

III.

For the foregoing reasons, we DENY Petitioner's petition for review.