**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARIE DELORAS JEAN, a/k/a Marie
Dolores Jean, a/k/a Marie Dolores
Duversaint, a/k/a Marie Dolores
Jean-Duversaint,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 04-2292

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A91-563-585)

Argued: October 26, 2005

Decided: January 27, 2006

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

---

Petition for review dismissed in part and denied in part by published
opinion. Judge Traxler wrote the opinion, in which Judge Wilkinson
and Judge Williams joined.

---

## COUNSEL

**ARGUED:** Mary Ann Berlin, Baltimore, Maryland, for Petitioner.
Bryan Stuart Beier, UNITED STATES DEPARTMENT OF JUS-
TICE, Office of Immigration Litigation, Washington, D.C., for

Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

**OPINION**

TRAXLER, Circuit Judge:

Marie Deloras Jean petitions for review of an order of the Board of Immigration Appeals ("BIA") denying her motion to reconsider the BIA's denial of her applications for cancellation of removal and for a waiver of inadmissibility. We dismiss her petition for lack of jurisdiction to the extent that it challenges the BIA's refusal to reconsider the denial of a waiver of inadmissibility. Finding no abuse of discretion by the BIA as to the remainder of Jean's claims, we deny them.

I.

In April 1997, the Immigration and Naturalization Service ("INS"), now known as the Department of Homeland Security, placed Jean, a native and citizen of Haiti, in removal proceedings as "[a]n alien present in the United States without being admitted or paroled." 8 U.S.C.A. § 1182(a)(6)(A)(i) (West 1999). Although Jean conceded removability, she applied for discretionary relief in the form of cancellation of removal, *see* 8 U.S.C.A. § 1229b(b)(1) (West Supp. 2005), or, alternatively, voluntary departure, *see* 8 U.S.C.A. § 1229c (West 1999 & Supp. 2005). The immigration judge, however, concluded that Jean was statutorily ineligible for cancellation of removal for failure to establish the requisite "good moral character," based on his factual determination that Jean was not truthful during the proceedings about her criminal history. *See* 8 U.S.C.A. § 1229b(b)(1)(B).[1]

---

[1]The relevant statute provides as follows:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable if the alien—

Specifically, the immigration judge noted that Jean "indicated on her application for cancellation of removal and during direct examination that she was not arrested or convicted of any crimes" but then admitted during cross examination "that in fact she had been arrested for petty larceny and ultimately convicted of disorderly conduct." J.A. 16. Jean also admitted that she had been "arrest[ed] during the pendency of these proceedings for multiple charges [of] credit card fraud." *Id.* The immigration judge concluded Jean's "failure to make full disclosure of her criminal history both in her application and direct testimony" were "material omissions under oath made to avoid discovery of facts adverse to her application" that "preclude[d] a finding of good moral character." J.A. 16-17. *See* 8 U.S.C.A. § 1101(f)(6) (West 1999 & Supp. 2005) (precluding a finding of good moral character for an alien "who has given false testimony for the purpose of obtaining . . . benefits under [the INA]"). The immigration judge further suggested that a finding of good moral character was prohibited because Jean admitted committing "crimes of moral turpitude." J.A. 16. *See* 8 U.S.C.A. § 1101(f)(3); 8 U.S.C.A. § 1182(a)(2)(A). Alternatively, the immigration judge concluded that Jean was ineligible for cancellation of removal because she failed to establish that her removal would result "in exceptional and extremely unusual hardship." 8 U.S.C.A. § 1229b(b)(1)(D). Finally, the immigration judge refused to grant voluntary departure and entered an order of removal in June 1998.

---

(A)  has been physically present in the United States for a continuous period of not less than 10 years . . . ;

(B)  *has been a person of good moral character during such period*;

(C)  has not been convicted of [certain enumerated criminal offenses]; and

(D)  establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C.A. § 1229b(b)(1)(B) (emphasis added).

Jean appealed to the BIA, arguing that the record did not support the immigration judge's finding that Jean testified falsely. Jean argued that "[a]t worst, her testimony was equivocal and convey[ed] a tremendous amount of confusion" and could not be construed as intentionally false. J.A. 30. While the appeal was pending, Congress enacted the Haitian Refugee Immigration Fairness Act of 1998 ("HRIFA"), Pub. L. No. 105-277, § 901, 112 Stat. 2681 (1998), which allows certain Haitian nationals to seek lawful permanent resident status without having to surmount the standard barriers faced by other immigrants. Ordinarily, for example, an immigrant seeking to adjust his status must have been "inspected and admitted or paroled into the United States." 8 U.S.C.A. § 1255(a) (West Supp. 2005); *see* 8 C.F.R. § 1245.1(b)(3) (2005). A Haitian national, however, may be eligible for an adjustment of status even though he was never officially inspected and admitted into the United States. *See* 8 C.F.R. § 1245.15(b). One of the biggest advantages is that an applicant for permanent resident status under HRIFA is relieved of the burden of proving that he "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence." 8 U.S.C.A. § 1255(a); *see* 8 U.S.C.A. § 1182(a) (West 1999 & Supp. 2005) (listing classes of aliens ineligible for immigrant visas or admission to the United States).

Under HRIFA, many inadmissibility grounds that render other aliens ineligible for visas do not apply to qualified Haitian nationals. For example, qualifying applicants under HRIFA are not inadmissible on the grounds that they entered illegally or that they are likely to become a public charge. *See* 8 U.S.C.A. §§ 1182(a)(4)(A), (6)(A)(i) (West 1999); 8 C.F.R. § 1245.15(e)(1). While certain grounds for inadmissibility still apply to HRIFA applicants, the applicant may seek a waiver of inadmissibility under section 212 of the Immigration and Nationality Act ("INA"), as would any other alien seeking to establish visa eligibility. *See* 8 C.F.R. § 1245.15(e)(2). For example, an applicant seeking relief under HRIFA is inadmissible, and thus not eligible for an adjustment of status, if he has been convicted of "a crime involving moral turpitude." 8 U.S.C.A. § 1182(a)(2)(A)(i)(I); *see* 8 C.F.R. § 1245.15(e)(1). The Attorney General has the discretion to grant a waiver of this particular ground of inadmissibility, provided certain statutory requirements are "established to the satisfaction of

the Attorney General." 8 U.S.C.A. § 1182(h)(1)(A) (West Supp. 2005).

Before the BIA had ruled on the merits of her appeal, Jean moved to have her status adjusted under HRIFA. In November 1999, the BIA remanded the case to the immigration judge for consideration of Jean's application for relief under HRIFA. On December 10, 1998, during the time that her appeal to the BIA was pending, Jean was convicted of petty theft in Prince George's County, Maryland, for which she received probation. Because this offense qualified as "a crime involving moral turpitude," 8 U.S.C.A. § 1182(a)(2)(A)(i)(I), which constitutes grounds for finding Jean inadmissible and therefore ineligible for relief under HRIFA, *see* 8 C.F.R. §§ 1245.15(b)(3), (e)(1), the parties agreed Jean was required to seek a waiver of inadmissibility in order to be eligible for an adjustment of status.

At the hearing on Jean's request for a waiver of inadmissibility, evidence of Jean's criminal history included an April 1998 arrest for possession of stolen property and forgery; the December 1998 conviction for theft; and December 1999 charges for theft, forgery, and credit card fraud. In light of this evidence, the immigration judge continued the case to afford Jean "an opportunity to demonstrate good moral character and rehabilitation from her criminal past." J.A. 47. Ultimately, after continuing the case for a second time, the immigration judge held a final hearing in June 2002. In the interim, Jean had been charged with three counts of leaving a child unattended.

On August 27, 2002, the immigration judge entered an order denying Jean's application for waiver of inadmissibility. Although the immigration judge found that Jean "introduced sufficient evidence to establish 'extreme hardship,' and was therefore eligible for a waiver, the judge concluded that Jean "failed to demonstrate that she merits relief as a matter of discretion." J.A. 49. Applying the factors articulated by the BIA in *Matter of Marin*, 16 I. & N. Dec. 581, 584-85 (BIA 1978), the immigration judge concluded that the factors adverse to the favorable exercise of discretion — primarily Jean's record of criminal activity and failure to rehabilitate herself — outweighed favorable factors including Jean's lengthy presence in the United States from an early age, her traumatic childhood, and the likelihood that her removal would result in hardship for her children.

On April 30, 2004, the BIA issued a decision adopting and affirming both the June 5, 1998, decision of the immigration judge denying cancellation of removal and voluntary departure and the August 27, 2002, decision denying a waiver of inadmissibility. The BIA summarized its decision as follows:

> We note that several equities are present in this case, including the length of the respondent's residence in the United States, as well as the presence of her three United States citizen children. Nonetheless, we agree that the respondent has failed to demonstrate good moral character required for cancellation of removal and voluntary departure, and that she does not merit a favorable exercise of discretion in adjudicating her application for a waiver of inadmissibility . . . so as to allow her to adjust status under HRIFA.

J.A. 81.

Jean did not petition for judicial review of this decision. Instead, she filed a motion for the BIA to reconsider its decision of April 30, 2004. With respect to the BIA's denial of cancellation of removal, Jean essentially restated her original argument to the BIA that she did not lie under oath about her criminal history and that the immigration judge simply misunderstood the testimony in so concluding. Jean also argued that the BIA erred in adopting the immigration judge's refusal to grant a third continuance for Jean to find representation. On September 17, 2004, the BIA denied this motion as it could "find no new legal argument or particular aspect of the case which was overlooked and no ground upon which to reconsider our previous decision." J.A. 133.[2]

---

[2]Jean also filed a motion to reopen to allow her to introduce new evidence of her rehabilitation. The BIA concluded that the additional facts submitted by Jean in support of her motion to reopen were merely "cumulative of evidence which was of record at the time of [the BIA's] April 30, 2004, order." J.A. 133. The BIA also refused to reopen on the basis of Jean's assertion that she received ineffective legal counsel, concluding that Jean failed to meet the requirements necessary to establish a claim for ineffective assistance of counsel. In her petition for review, Jean does not challenge the BIA's refusal to reopen.

Jean then petitioned this court for review of the BIA's denial of her motion to reconsider. Jean raises two arguments. First, she contends that the BIA erred in adopting the immigration judge's original denial of relief which, according to Jean, rested on misstatements of fact. Second, Jean contends that she suffered a constitutional deprivation to the extent that the BIA refused to reconsider its adoption of the immigration judge's denial of a continuance.

II.

Because the underlying BIA decision involved the denial of discretionary relief from removal, we are obliged to verify our jurisdiction to review Jean's claims. Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress sharply circumscribed judicial review of various categories of BIA decisions, including denials of discretionary relief under certain enumerated provisions of the INA:

> **(2) Matters not subject to judicial review**
>
> . . .
>
> **(B) Denials of discretionary relief**
>
> Notwithstanding any other provision of law, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C.A. § 1252(a)(2)(B) (West 1999). Because decisions under sections 1182(h) and 1229b are included, this provision precludes judicial review of "any judgment regarding the granting of" waivers

of inadmissibility, *see* 8 U.S.C.A. § 1182(h), and cancellation of removal, *see* 8 U.S.C.A. § 1229b(b)(1). Although section 1252(a)(2)(B) appears, by its terms, to create an unqualified bar to judicial review of decisions involving the specified types of discretionary relief, many courts concluded that the statute was intended to eliminate judicial review of agency decisions resting on the exercise of discretion, but that "non-discretionary legal determinations regarding an alien's eligibility" for such relief fell outside of the jurisdiction-stripping language of section 1252(a)(2)(B) and were thus subject to direct review by the courts of appeal. *Moran v. Ashcroft*, 395 F.3d 1089, 1091 (9th Cir. 2005); *see Morales-Morales v. Ashcroft*, 384 F.3d 418, 421-22 (7th Cir. 2004); *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178 (3d Cir. 2003). This court has not weighed in on the scope of subsection (a)(2)(B) in the present context, but recently enacted legislation amending the judicial review provision makes it unnecessary to do so.

In May 2005, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005), essentially confirming the prevailing view on the scope of jurisdictional limitations imposed by section 1252(a)(2)(B). The new language provides that "[n]othing in subparagraph (B) or (C), or any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C.A. § 1252(a)(2)(D). Following the enactment of the REAL ID Act, therefore, direct judicial review is available for constitutional questions or questions of law arising from the agency's decision to deny discretionary relief. *See Higuit v. Gonzales*, ___ F.3d ___, 2006 WL 9606 at *2 (4th Cir. Jan. 3, 2006); *see also Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 319 (5th Cir. 2005). To the extent that a petition asks us to review a discretionary or factual determination, however, we still lack jurisdiction. *See Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005) (explaining that "discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review"); *see also Schroeck v. Gonzales*, 429 F.3d 947, 951 (10th Cir. 2005); *Grass v. Gonzales*, 418 F.3d 876, 878-79 (8th Cir. 2005). Accordingly, it is critical for us to determine whether the petition for review presents a legal or constitutional chal-

lenge to the agency's decision or whether the petition seeks review of a discretionary determination by the BIA.

A.  *Motion to Reconsider Denial of a Waiver of Inadmissibility*

To the extent Jean's petition for review challenges the BIA's refusal to reconsider the denial of a waiver of inadmissibility, we lack jurisdiction. As explained above, the BIA unquestionably denied Jean relief under section 1182(h) as a matter of discretion. Jean does not contend that the BIA applied the wrong standard or made an error of law in refusing to grant a waiver of inadmissibility. Jean argues only that the immigration judge drew the wrong factual conclusions from the evidence and then determined these conclusions outweighed any factors supporting a favorable exercise of discretion. In turn, Jean contends the BIA perpetuated this error by adopting the immigration judge's inaccurate view of the evidence. These are discretionary decisions, however, that we have no jurisdiction to review.

We realize, of course, that the merits of the underlying denial of a waiver of inadmissibility are not before us. Ordinarily, we review the BIA's decision to grant or deny a motion to reconsider for abuse of discretion. *See Zhong Guang Sun v. United States Dep't of Justice*, 421 F.3d 105, 107 (2d Cir. 2005); *cf. Stewart v. INS*, 181 F.3d 587, 595 (4th Cir. 1999) (applying abuse of discretion standard to review of denial of motion to reopen). And, although the decision on a motion to reconsider is itself discretionary, the jurisdictional limitations imposed by section 1252(a)(1)(B) do not preclude judicial review. *See Obioha v. Gonzales*, ___ F.3d ___, 2005 WL 3312762 (4th Cir. Dec. 8, 2005).

In this case, however, the fact that we are technically reviewing the BIA's denial of the motion to reconsider certainly does not afford us jurisdiction to consider Jean's argument. When the BIA refuses to reconsider the *discretionary* denial of relief under one of the provisions enumerated in 1252(a)(2)(B) — a decision which is not subject to review in the first place — the court will not have jurisdiction to review *that same denial* merely because it is dressed as a motion to reconsider. It is important to remember that Jean is in a less favorable posture now than if she had timely sought judicial review of the BIA's original denial, which was unreviewable in any event. As the

Fifth Circuit reasoned, "[i]t is axiomatic that if we are divested of jurisdiction to review an original determination by the [BIA] that an alien has failed to establish" that he merits a favorable exercise of discretion for a waiver of inadmissibility, "we must also be divested of jurisdiction to review the [BIA]'s denial of a motion to re[consider] on the ground that the alien . . . still [does not merit the favorable exercise of discretion]." *Rodriguez v. Ashcroft*, 253 F.3d 797, 800 (5th Cir. 2001) (per curiam). Otherwise, there would exist a "loophole" through which we "would thwart the clear intent of Congress that the courts not review the discretionary decisions of the BIA." *Id.* By contrast, when the BIA's denial of a motion to reconsider "ha[s] the effect of affirming the BIA's previous decisions denying . . . cancellation of removal . . . *based on statutory ineligibility*," we do not lack jurisdiction. *Sepulveda v. Gonzales*, 407 F.3d 59, 64 (2d Cir. 2005) (emphasis added); *see id.* (explaining that the court of appeals has jurisdiction to review the BIA's decision on a motion to reconsider that is "'sufficiently connected' to the final order of removal based on nondiscretionary factors").

In this case, Jean's petition for review reasserts the same arguments she raised in her motion for reconsideration and in her appeal to the BIA: that the immigration judge drew the wrong conclusions from the evidence and the BIA, in adopting these conclusions, erroneously decided not to exercise its discretion to grant a waiver of inadmissibility. Jean's opening brief includes a heading that suggests she is seeking review of the BIA's "fail[ure] to address" her claims in denying the motion to reconsider. Brief of Petitioner at 10. *See Casalena v. INS*, 984 F.2d 105, 107 (4th Cir. 1993) (explaining that the BIA must explain its decisions "in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted") (internal quotation marks omitted). Jean fails to develop this argument further, however, reverting to her basic contention that the record does not support the discretionary refusal to grant relief under section 1182(h). Thus, we lack jurisdiction to review Jean's petition to the extent it challenges the refusal to reconsider the denial of a waiver of inadmissibility.

B.   *Motion to Reconsider Denial of Cancellation of Removal*

To the extent that Jean's motion for reconsideration challenges the BIA's denial of her request for cancellation of removal, we conclude

that we have jurisdiction. As noted above, cancellation of removal is a discretionary form of relief, like a waiver of inadmissibility, falling within the scope of the jurisdiction-stripping language in section 1252(a)(2)(B)(i). Again, such decisions are not subject to judicial review to the extent they rest on the actual exercise of discretion by the BIA.

In this case, unlike the BIA's discretionary refusal to waive inadmissibility, the BIA's conclusion that Jean was statutorily precluded from demonstrating good moral character, rendering her ineligible for cancellation of removal, was not a discretionary decision. Jean's claim nevertheless fails because the BIA did not abuse its discretion in denying the motion to reconsider the denial of cancellation of removal.

As explained previously, the immigration judge concluded Jean was ineligible for cancellation of removal on alternative grounds: that she was precluded from being found "a person of good moral character," 8 U.S.C.A. § 1229b(b)(1)(B), and that her removal would not result "in exceptional and extremely unusual hardship," 8 U.S.C.A. § 1229b(b)(1)(D). Although the BIA adopted and affirmed this decision, it specifically noted that Jean "failed to demonstrate good moral character required for cancellation of removal." J.A. 81. The BIA's failure to rely specifically on the immigration judge's conclusion that Jean failed to establish extreme hardship was understandable in view of the fact that, in Jean's subsequent waiver of inadmissibility hearing, a second immigration judge determined that Jean did, in fact, submit sufficient evidence to establish that removal would result in extreme hardship. We proceed, therefore, with the understanding that the BIA's denial of Jean's application for cancellation of removal rested solely on the grounds that she was not able to satisfy the good moral character element.

The question becomes whether the decision that Jean was "precluded" from establishing "good moral character" was discretionary in nature. Consideration of the "good moral character" prerequisite for cancellation of removal requires reference to the general definition provision of the INA, which establishes a number of per se categories that, if applicable, bar an alien from establishing his "good moral character." *See* 8 U.S.C.A. § 1101(f) (West 1999 & Supp. 2005).

These ineligible categories include aliens "who ha[ve] given false testimony for the purpose of obtaining any benefits under this chapter," 8 U.S.C.A. § 1101(f)(6), and aliens who have committed crimes of moral turpitude, *see* 8 U.S.C.A. § 1101(f)(3). Section 1101(f) also provides a catch-all provision: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."

The decision that an alien falls within one or more of the ineligible per se categories is not a discretionary decision. It is essentially a legal determination involving the application of law to factual findings. *See Ikenokwalu-White v. INS*, 316 F.3d 798, 803 (8th Cir. 2003); *see also Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003); *Bernal-Vallejo v. INS*, 195 F.3d 56, 62 (1st Cir. 1999). We conclude, therefore, that whether the BIA erred in determining that Jean was precluded from establishing good moral character based on her false testimony and crimes of moral turpitude presents a reviewable decision. *See* 8 U.S.C.A. § 1252(a)(2)(D).

Of course, Jean failed to petition for judicial review of the BIA's underlying denial of relief. Therefore, our review is limited to the motion to reconsider the denial of cancellation of removal. A motion to reconsider asserts that the BIA made an error "of fact or law" in the underlying decision. 8 C.F.R. § 1003.2(b)(1) (2005). The BIA enjoys broad discretion to grant or deny a motion to reconsider, and thus we will reverse only for an abuse of discretion. *See Zhong Guang Sun*, 421 F.3d at 107. In applying this standard, we must affirm the BIA's denial unless it lacked a "rational explanation," "departed from established policies," or "rested on an impermissible basis." *M.A. v. INS*, 899 F.2d 304, 310 (4th Cir. 1990) (en banc).

In her motion to reconsider, Jean simply repackaged her original argument that the immigration judge incorrectly concluded that she testified falsely and should have instead found that Jean was simply confused by counsel's misleading questions. The BIA could "find no new legal argument or particular aspect of the case which was overlooked." J.A. 133. We conclude that the BIA supplied a rational explanation for its decision and properly exercised its discretion in denying Jean's motion to reconsider.

## III.

Finally, Jean challenges the immigration judge's refusal to grant her a continuance of the case following the withdrawal of counsel shortly before her final status hearing. Following the evidentiary hearing on Jean's application for a waiver of inadmissibility, at which Jean was represented by counsel, the immigration judge continued the case for well over one year before entering a final order denying relief under section 1182(h) and closing the case. The immigration judge delayed making a final decision to allow Jean to build a case that she was rehabilitated and merited an exercise of discretion in her favor. During this extended period, the immigration judge conducted periodic "status" hearings to determine Jean's progress. Six weeks before the last of the scheduled status hearings, Jean's attorney moved to withdraw as counsel based on Jean's failure to make fee payments.

The judge granted the motion and Jean appeared at the hearing pro se. Although Jean indicated that she needed a continuance to obtain a new attorney, the immigration judge refused to delay the case further. The judge noted that the submission of formal testimony and documentary evidence was essentially complete and that Jean had been afforded a substantial period of time—during which time she was represented by counsel—to make progress towards rehabilitation. The immigration judge indicated that she intended to enter a final order and invited Jean to give the court any additional information she wanted to present. The immigration judge also asked Jean a number of questions relating to her charges for child neglect. Jean contends that the denial of another continuance to secure replacement counsel deprived her of a fair immigration proceeding as mandated by the principles of procedural due process.

Again, because Jean failed to petition for review of the underlying decision of the immigration judge, including the decision to deny a further continuance, our review is limited to whether the BIA abused its considerable discretion in denying Jean's motion to reconsider the denial of a continuance — which is *in and of itself* a discretionary decision for the immigration judge. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). We find no basis whatsoever for concluding that the BIA abused its discretion in denying the motion to reconsider the

question of a continuance. Jean's motion to reconsider was clearly deficient in that it failed to present additional legal arguments or identify some aspect of the decision that the BIA overlooked on its first go-around. Her motion to reconsider merely repeated her argument on appeal to the BIA.

Moreover, Jean would lose even if she had raised her due process argument in a timely petition for review to this court. Removal proceedings are generally subject to the requirements of procedural due process. *See Rusu v. INS*, 296 F.3d 316, 320 (4th Cir. 2002). In order to succeed on a due process claim, however, "an alien must demonstrate that he was prejudiced by any such violation," meaning that the alleged violation "is likely to [have] impact[ed] the results of the proceedings." *Id.* at 320-21 (internal quotation marks omitted). Jean fails to point to any indication that the immigration judge would likely have determined that Jean was worthy of a favorable exercise of discretion had Jean been granted a continuance of the final status hearing. She highlights no additional facts that she was unable to present in the absence of counsel and that would have tipped the balance of discretionary factors in her favor. *See Matter of Marin*, 16 I. & N. Dec. 581, 584-85 (BIA 1978). Accordingly, we reject this argument and deny Jean's petition on this basis as well.

IV.

For the foregoing reasons, we conclude that we are without jurisdiction to review the BIA's denial of Jean's motion to reconsider the denial of a waiver of inadmissibility, and we dismiss Jean's petition to the extent that it challenges this aspect of the BIA's decision. We further conclude that we have jurisdiction to review the BIA's denial of the motion to reconsider the denial of cancellation of removal, but we deny the petition for review on the basis that the BIA did not abuse its discretion. Finally, we conclude that the BIA did not abuse its discretion in denying the motion to reconsider its affirmance of the immigration judge's denial of a continuance, and we deny Jean's petition for review with respect to this issue.

*PETITION FOR REVIEW DISMISSED IN PART AND*
*DENIED IN PART*