## MATTER OF SLADE

### In DEPORTATION Proceedings

#### A–10296218

*Decided by Board November 30, 1962*

Where respondent, who entered the United States as a nonquota immigrant on the basis of a fradulent marriage, is deportable under section 241(a)(1) of the Immigration and Nationality Act because excludable at time of entry under section 211(a) in that she was not a nonquota immigrant as specified in her visa, she is ineligible for the benefits of section 241(f) since she was not "otherwise admissible" at entry.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—not nonquota immigrant.

This is an appeal from the order of the special inquiry officer finding respondent deportable upon the ground stated above, and granting voluntary departure.

The appeal does not appear to be timely filed (8 CFR secs. 3.3, 242.21 (Supp. 1961), *Matter of Z—M—*, 3 I. & N. Dec. 167, *Matter of SS. "Dirphys"*, 3 I. & N. Dec. 223); however, in view of the importance of the issue involving section 241(f) of the Act (8 U.S.C.A. 1251(f) (Supp. 1961)), we shall take jurisdiction by certification (8 CFR 3.1 (c) (Supp. 1961)).

In the notice of appeal, issue is taken with the finding of deportability, and with the denial of an application for creation of the status of an alien lawfully admitted for permanent residence under section 244(a) of the Immigration and Nationality Act. However, we find no application for the relief. The special inquiry officer neither mentioned nor ruled upon such an application, and counsel did not refer to it in his brief or oral argument; we shall, therefore, address ourselves to the question of deportability.

The issues are: (1) whether respondent who entered as a nonquota immigrant is deportable because she was not entitled to such status, (2) if deportable, whether respondent comes within a provision of law

which removes certain aliens who obtained visas by fraud from liability to deportation. As to the first question we find in the affirmative, and as to the second, in the negative.

Respondent, a 34-year-old female, a native and citizen of Jamaica, entered the United States upon surrender of a nonquota immigrant visa issued to her as the wife of Joseph Slade, a United States citizen. The Service charges that the marriage to Slade was a sham one, that it did not create the relation of husband and wife for immigration purposes, and that the respondent therefore was not entitled to a nonquota status as the wife of a United States citizen.

Respondent refused to testify at the deportation hearing concerning her marriage, but the record contains sworn statements made by her on this subject to a Service investigator on two occasions (Ex. 2, statement of April 30, 1959; Ex. 3, statement of October 18, 1961). These statements reveal that after respondent entered the United States as a visitor, she paid Dudley Goulbourne and others the sum of $400 to arrange a marriage between herself and a United States citizen. On March 12, 1956, in accordance with the arrangements, Goulbourne introduced the respondent to Joseph Slade, a person who had agreed to marry respondent for a fee. On this same day, the parties secured a marriage license and were married. (The marriage certificate was postdated to March 14, 1956 to conceal the fact that there had been a violation of a state law which required the passage of 24 hours between the issuance of the license and the performance of the marriage.) A few hours after the marriage was performed, respondent and her husband parted and went separate ways. No attempt was made to consummate the marriage. The respondent stated the marriage had been entered into with the mutual understanding that it would not be consummated, that there would be no marital responsibilities, that the parties would not live together, and that it would be terminated by divorce after the respondent secured a visa and became a United States citizen (probably within a 3-year period after the marriage), that the marriage was a "paper" one, and that it had been entered into solely to enable respondent to get a nonquota visa as the wife of a United States citizen.

A marriage of the nature described—a marriage entered into by both parties without a *bona fide* intention of residing together as husband and wife and made merely for the purpose of obtaining benefits under the immigration laws, is not a valid marriage for immigration purposes (*Matter of M—*, 8 I. & N. Dec. 217). For immigration purposes, therefore, the respondent was not married to a United States citizen at the time she applied for the visa; she was not entitled to a nonquota visa, and she is clearly deportable on the charge that

129

she was not a nonquota immigrant at the time of entry. The charge in the order to show cause is sustained.

We come now to the question as to whether respondent is removed from liability to deportation by section 241(f) of the Act (8 U.S.C. 1251(f) (Supp. 1961)) [1] which provides in pertinent part that the requirement for the deportation of an alien who procured a visa by fraud "shall not apply to an alien otherwise admissible at the time of entry" who is the parent of a United States citizen (respondent is the mother of a child born out of wedlock in the United States). Counsel contends that, since it has been found that respondent entered into a fraudulent marriage which became the basis for the issuance of the nonquota visa, section 241(f) of the Act applies and prevents the use of the fraud and the obtaining of the nonquota visa as grounds of deportation.[2] The special inquiry officer, pointing out respondent's deportation was being sought not on a fraud charge but on a documentary ground, assumed for the purpose of discussion, that respondent could have been found deportable under section 212(a)(19) of the Act because of her fraudulent misrepresentations to the consul when she obtained her visa; he concluded, nevertheless, that respondent did not come within section 241(f) of the Act because being deportable on a documentary ground she was not "otherwise admissible" than by reason of section 212(a)(19) of the Act.

Counsel's contentions are made against the fact that legislation similar in essence to that found in section 241(f) of the Act, was construed as authorizing waiver of only two grounds of deportation—a fraud ground under section 212(a)(19) of the Act, and the ground that a person was not of the nationality shown in his visa (section 211(a) of the Act, *supra*, note 2). The legislation referred to, the predecessor of section 241(f) of the Act, is section 7 of Public Law 85–316, 85th Cong., S. 2792, September 11, 1957 which reads as follows:

---

[1] Section 241(f) of the Act provides as follows:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

[2] Aliens are deportable who are excludable at time of entry (section 241(a)(1) of the Act, 8 U.S.C. 1251(a)(1)). Section 212(a)(19) of the Act, 8 U.S.C. 1182(a)(19) provides for the exclusion of "Any alien who seeks to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact;"

Section 211(a) of the Act (8 U.S.C. 1181(a)) makes excludable aliens who fail to comply with certain documentary requirements. It provides: "No immigrant

Sec. 7. The provisions of section 241 of the Immigration and Nationality Act relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as (1) aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation, or (2) aliens who were not of the nationality specified in their visas, shall not apply to an alien otherwise admissible at the time of entry who (A) is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence; or (B) was admitted to the United States between December 22, 1945, and November 1, 1954, both dates inclusive, and misrepresented his nationality, place of birth, identity, or residence in applying for a visa: *Provided*, That such alien described in clause (B) shall establish to the satisfaction of the Attorney General that the misrepresentation was predicated upon the alien's fear of persecution because of race, religion, or political opinion, if repatriated to his former home or residence, and was not committed for the purpose of evading the quota restrictions of the immigration laws or an investigation of the alien at the place of his former home, or residence, or elsewhere. After the effective date of this Act, any alien who is the spouse, parent, or child of a United States citizen or of an alien lawfully admitted for permanent residence and who is excludable because (1) he seeks, has sought to procure, or has procured, a visa or other documentation, or entry into the United States, by fraud or misrepresentation, or (2) he admits the commission of perjury in connection therewith, shall hereafter be granted a visa and admitted to the United States for permanent residence, if otherwise admissible, if the Attorney General in his discretion has consented to the alien's applying or reapplying for a visa and for admission to the United States.

As we have previously stated, the section was held to excuse from liability to deportation, a person who had made a material misrepresentation and a person who had been charged to the wrong quota. We held the law was not intended to cover any other ground of inadmissibility (*Matter of D'O—*, 8 I. & N. Dec. 215, *Matter of S—*, 7 I. & N. Dec. 715; see *Langhammer v. Hamilton*, 194 F. Supp. 854, 857, D. Mass. (1961), aff'd 295 F. 2d 642, 648, 1st Cir. (1961), *Buffalino v. Holland*, 277 F. 2d 270, 3rd. Cir. (1960), cert. den. 364 U.S. 863). The wording of section 7 would hardly permit another interpretation.[3]

shall be admitted into the United States unless at the time of application for admission he (1) has a valid unexpired immigrant visa or was born subsequent to the issuance of such immigrant visa of the accompanying parent, (2) is properly chargeable to the quota specified in the immigrant visa, (3) is a non-quota immigrant if specified as such in the immigrant visa, (4) is of the proper status under the quota specified in the immigrant visa, and (5) is otherwise admissible under this Act."

[3] The legislative intent in passing section 7 of the Act of September 11, 1957 is summarized in the report of the Senate Committee accompanying the Senate Bill which became the law. The report states:

Section 7 of the bill [S. 2972] would provide for the correction of a situation which exists in the case of certain aliens admitted under the Displaced Persons Act who are in a deportable status because of misrepresentations made with reference to their nationality or place of birth to avoid repatriation to Com-

Footnote continued on following page.

The fact that two grounds of inadmissibility were specifically mentioned in section 7 would, on well known legal principles, rule out grounds not mentioned.

Moreover, to extend the section to cover any ground of inadmissibility not specifically mentioned by Congress would make it impossible to withhold its thrust from *any* ground of inadmissibility, whether documentary criminal or subversive, which had been the subject of a misrepresentation, for there is no logical basis on which to differentiate grounds of deportation which have not been specifically mentioned. Bearing in mind that an alien receives the waiver not as a matter of discretion, but of right it becomes most unlikely that Congress could have intended a waiver of any but the two grounds specifically mentioned.[4]

Congressional comment reveals that the provisions of section 7 of Public Law 85-316 were incorporated in the Immigration and Nationality Act "for the purpose of codification" and to "codify existing law applicable to the granting of waivers of certain excluding provisions of the Immigration and Nationality Act and to consolidate with the basic statute the matter now contained in separate enactments, to wit, * * * section 7 of the act of September 11, 1957" (1961 U.S. Code Cong. & Ad. News, 87th Cong., 1st Sess. 2950, 2981). The Congressional comment continues:

It is not proposed to incorporate into the basic statute a provision contained in section 7 of the act of September 11, 1957, relating to deportation of certain aliens within the United States where deportation was predicated on certain misrepresentations made by a specific category of immigrants, namely, displaced persons and refugees who entered the United States not later than November 1, 1954. This special relief provision of the 1957 act has served its humanitarian

---

Footnotes continued.

munist-controlled countries. This section would also permit a similar adjustment to be made in the case of spouses, parents, or children of United States citizens or lawful resident aliens, who have sought to procure or have procured visas or other documentation or entry into the United States by fraud or misrepresentation. The section further provides that after the effective date, the Attorney General shall have discretionary authority to waive the ground of inadmissibility in behalf of the spouse, parent or child of a United States citizen or alien lawfully admitted for permanent residence who is found to be subject to exclusion because he has practiced fraud or made a misrepresentation in connection with his visa application or application for admission to the United States. (S. Rep. No. 1057, 85th Cong., 1st Sess. 5 (1957).

[4] A ground of inadmissibility which would not exist except for the fact that a false statement was made, *i.e.*, the admission of the commission of perjury in the making of a false statement under oath before the consul (section 212(a) (9) of the Act) merges in the obtaining of the visa by fraud and comes within the waiver (*Matter of Y——*, 8 I. & N. Dec. 143, 149). The charge that a person was not a nonquota immigrant does not flow from the fact that *fraud was committed in obtaining a visa*, it precedes the fraud.

purpose and its continuation and inclusion into permanent law appears unnecessary inasmuch as according to available information persons eligible to be granted such relief have already obtained the envisaged benefit. (1961 U.S. Code Cong. & Ad. News, 87th Cong., 1st Sess. 2981).

In other words, the codification withdrew relief from aliens who did not have the specified relations in the United States but the codification purported to make no other change. Since section 241(f) of the Act is termed a codification, we see no reason for extending the scope of the section. This is especially so since published administrative and judicial interpretation of section 7 of Public Law 85–316 existed before the codification was made.[5]

Another reason for the belief that Congress intended no change to be made in the Board's interpretation that only two grounds were waived is found in section 10 of Public Law 87–310 amending section 205(c) of the Act (8 U.S.C. 1155(c) (Supp. 1961)) in which Congress forbade the issuance of a nonquota visa to an alien who after a sham marriage had entered into a valid marriage to a United States citizen. This was done to "counteract the increasing number of fraudulent acquisitions of nonquota status through sham marriages." (1961 U.S. Code Cong. & Ad. News, 87th Cong., 1st Sess. 2980). If one going through a sham marriage achieved a nonquota status by the sham marriage, there would appear to be only unusual situations which would require subsequent application for a nonquota visa and it is unlikely that Congress would enact a law to deal with such rare cases. Moreover, we can see no reason why by section 241(f) of the Act Congress would have intended to give permanent residence to an alien who had achieved nonquota status fraudulently by means of a sham marriage, if at the same time Congress would not give permanent residence to one in this category who had subsequently lawfully married a United States citizen.

Does our conclusion make section 241(f) of the Act meaningless as counsel contends? We think not. A person deportable as having obtained a visa by fraud is barred from the United States. In the absence of legislation such as that contained in section 241(f) of the Act there could be no waiver of this perpetual bar to the acquisition of lawful permanent residence in the United States even though ties with United States citizens or legally resident aliens existed. Section 241(f) of the Act is also effective to require termination of deportation proceedings where an alien willfully misrepresented a matter which did not make her inadmissible but which was nevertheless material; i.e., a misrepresentation concerning name, existence of a

---

[5] Congressional awareness of Board decisions is shown (see 1961 U.S. Code Cong. & Ad. News, 87th Cong., 1st Sess., 2984, comment on two Board decisions concerning expatriation, and section 401 of the Act, 8 U.S.C. 1106).

conviction of a crime which did not involve moral turpitude, *etc.* (see, *Matter of S— and B—C—*, Int. Dec. 1168).

*Matter of G—*, 8 I. & N. Dec. 355, cited by counsel as authority for granting relief to respondent supports the Board's position. In the case cited, respondent had obtained a *nonquota* immigrant visa by alleging he was the husband of an American citizen; in fact he was not. He was found deportable on the same section under which respondent's deportation is sought; he was required to depart from the United States; deportation proceedings were *not* terminated.

*Matter of Y—*, 8 I. & N. Dec. 143, is cited by counsel. We fail to see its applicability. We stated there that a qualitative ground of inadmissibility arising out of the commission of criminal or subversive acts is not waived under section 7 of the Act of September 11, 1957 and that the lack of documents which would have otherwise made the alien inadmissible to the United States could be waived under section 211(b) of the Act which authorizes the admission without documents of an alien lawfully admitted for permanent residence who departed from the United States temporarily. Such waiver would not be applicable to the present case. Respondent would therefore, remain deportable on documentary grounds as well as because of the fraud.

*Matter of T—*, 8 I. & N. Dec. 493, cited by counsel is not apposite. It involves section 241(c) of the Act (8 U.S.C. 1251(c)) which is not before us. We held that the failure of the service to sustain a fraud charge based on 241(c) of the Act precludes the sustaining of a documentary charge under 241(a) of the Act. In the instant case, it is clear that the fraud charge based upon the misrepresentation as to marital status and destination, before the consul, and the nonquota charge are not dependent upon each other. Whether or not a fraud charge is sustained, the respondent was not validly married to a United States citizen and was not entitled to a nonquota status.

Since the respondent attempts to secure a waiver of grounds other than that she procured a visa by fraud or that she was not of the nationality specified in the visa, and since she was also inadmissible for an additional ground—the fact that she was not a nonquota immigrant as her visa showed her to be, we hold she is ineligible for relief under section 241(f) of the Act. Respondent was no more admissible at time of entry than was an alien who concealed the fact that he had been a member of the Communist Party.

Counsel is of the belief that failure of the Government to lodge a charge accusing the respondent of having obtained a visa by fraud is being used to prevent the respondent from taking advantage of the benefits of section 241(f) of the Act. Obviously this is not so. Even if the respondent were deportable as having obtained a visa by fraud,

we do not believe she would be entitled to the benefits of section 241 (f) of the Act.

We need add nothing to the special inquiry officer's discussion of counsel's contentions concerning the use of respondent's admissions against interest.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.