**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 06-3522

_____

| | |
|---|---|
| Vladimir Liadov, et al., | * |
| | * |
| Petitioners, | * |
| | * |
| v. | * |
| | * |
| Michael B. Mukasey, Attorney | * Petition for Review of an Order |
| General of the United States,[1] | * of the Board of Immigration Appeals. |
| | * |
| Respondent. | * |
| ----------------------------------------------- | * |
| American Immigration Law | * |
| Foundation, et al., | * |
| | * |
| Amici on Behalf of Petitioners. | * |

_____

Submitted: June 14, 2007
Filed: March 14, 2008 (Corrected: 3/26/2008)

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Vladimir Liadov, his wife Laima, and their children, Agnija and Andrey, conceded removability and petitioned for asylum, withholding of removal, and relief

_____

[1]Attorney General Mukasey is substituted as respondent pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

under the Convention Against Torture ("CAT"). An immigration judge denied relief, ordered the Liadovs removed to Lithuania, and granted them voluntary departure. The Board of Immigration Appeals ("BIA") dismissed their administrative appeal as untimely by one day. The Liadovs filed a timely motion urging the BIA to reconsider the dismissal, explaining that their attorney deposited the notice of appeal with an overnight delivery service two days before the filing deadline and contracted for next-day delivery. The BIA denied the motion on the ground that "the Board does not have the authority to extend the time in which to file a Notice of Appeal."

The Liadovs petitioned for review of the BIA order denying reconsideration. We granted the parties' motion to remand to the BIA for further consideration in light of two intervening circuit court decisions, Sun v. U.S. Dep't of Justice, 421 F.3d 105 (2d Cir. 2005), and Oh v. Gonzales, 406 F.3d 611 (9th Cir. 2005). On remand, the BIA issued a precedent decision, see 8 C.F.R. § 1003.1(g), again asserting that it lacked jurisdiction to consider the Liadovs' untimely appeal, and declining to exercise its discretionary authority to certify the Liadovs' case to itself under 8 C.F.R. § 1003.1(c). In re Liadov, 23 I & N Dec. 990 (BIA 2006). The Liadovs petition for judicial review of that order.[2] We deny the petition for review.

### I. Of Untimely Appeals, Jurisdiction, and Judicial Review

**A.** The Liadovs seek judicial review of an order of the BIA. The immigration laws grant the courts of appeals exclusive jurisdiction to review a "final order of

---

[2]A petition for review must be filed within 30 days of the final order of removal. 8 U.S.C. § 1252(b)(1). The Liadovs' timely motion to reconsider did not toll the time limit in § 1252. Stone v. INS, 514 U.S. 386, 405-06 (1995). Therefore, we have jurisdiction to review the BIA's denial of reconsideration but not the initial order of removal. Boudaguian v. Ashcroft, 376 F.3d 825, 827-28 (8th Cir. 2004).

removal." 8 U.S.C. § 1252(a)(1), (5).[3] A BIA order denying reconsideration is reviewable as a final order of removal. See Esenwah v. Ashcroft, 378 F.3d 763, 765 (8th Cir. 2004), cert. denied, 544 U.S. 962 (2005). But we may review a final order of removal only if the alien "has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1). "[E]xhaustion of administrative remedies is required where Congress imposes an exhaustion requirement by statute." Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579 (1989).

It is well-settled in the circuits, with strong recent support from the Supreme Court, that an alien whose appeal to the BIA was dismissed as untimely is precluded from judicial review of the merits of the removal order because he failed to properly exhaust an available administrative remedy. See Sswajje v. Ashcroft, 350 F.3d 528, 532 (6th Cir. 2003), and cases cited; cf. Woodford v. Ngo, 126 S. Ct. 2378, 2385-86 (2006). In the terminology of our habeas corpus jurisprudence, the alien's procedural default before the BIA created a procedural bar to judicial review. The reasons for this rule are apparent. The exhaustion requirement recognizes the BIA's primary responsibility to exercise the discretionary powers Congress has delegated, and it provides the agency "an opportunity to correct its own mistakes with respect to the programs it administers . . . ." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). These purposes would be frustrated if an alien could avoid the exhaustion requirement by filing an untimely administrative appeal and then seeking direct judicial review of the order of removal. See Woodford, 126 S. Ct. at 2384-87.

The Attorney General's regulations grant aliens the right to appeal an order of removal to the BIA. See 8 C.F.R. § 1003.1(b)(2). The notice of appeal to the BIA

---

[3]Prior to the Immigration and Nationality Act of 1952, there was no judicial review of deportation orders, other than by habeas corpus. See Shaughnessy v. Pedreiro, 349 U.S. 48, 50 (1955). In 1961, Congress made review in the courts of appeals the exclusive procedure "to abbreviate the process of judicial review" and thereby "frustrate . . . dilatory tactics." Foti v. INS, 375 U.S. 217, 225 (1963).

"shall be filed . . . within 30 calendar days" of the immigration judge's oral or written decision. 8 C.F.R. § 1003.38(b). In this case, the Liadovs' notice of appeal was filed one day late. The BIA dismissed their appeal, ruling that "[n]either the statute nor the regulations grant us the authority to extend the time for filing appeals." Liadov, 23 I & N Dec. at 993. That ruling was consistent with BIA decisions dating back at least to 1948. See, e.g., In re Dirphys, 3 I & N 223 (BIA 1948); In re G.Z., 5 I & N Dec. 295 (BIA 1953); In re Escobar, 18 I & N Dec. 412 (BIA 1983). Confirming this long-standing agency rule, the Attorney General ruled in 2002 that "[t]his deadline is mandatory and jurisdictional." In re Jean, 23 I & N Dec. 373, 378 (BIA 2002), citing Da Cruz v. INS, 4 F.3d 721, 722 (9th Cir. 1993).

The BIA's ruling that it lacks "jurisdiction" to consider an untimely appeal from a final order of removal has the effect of depriving the alien of judicial review that is otherwise mandated by statute for failure to exhaust this available administrative remedy. In these circumstances, a reviewing court necessarily has jurisdiction to review the agency's jurisdictional ruling. See generally "[BIA]: Procedural Reforms to Improve Case Management," 67 Fed. Reg. 54878, 54882-85 (Aug. 26, 2002). The Liadovs and supporting amici argue that the BIA's ruling is inconsistent with agency practice and is contrary to decisions in four circuits, including our own decision in Atiqullah v. INS, 39 F.3d 896, 898 (8th Cir. 1994), which, they contend, should be controlling.

**B.** Federal courts have often said that statutes and court rules establishing time limits are "mandatory and jurisdictional." United States v. Robinson, 361 U.S. 220, 228-29 (1960). In recent cases, the Supreme Court has distinguished between time constraints that limit a court's subject matter jurisdiction, and "claim-processing rules" that may be mandatory but do not limit the tribunal's jurisdiction and therefore may be waived or forfeited. See Eberhart v. United States, 546 U.S. 12, 13-19 (2005). However, in Bowles v. Russell, 127 S. Ct. 2360, 2365-66 (2007), decided after oral argument in this case, the Court adhered to prior cases declaring that statutes

prescribing the time in which parties may file cases in the lower federal courts are truly jurisdictional, that is, they are congressional limits on our subject matter jurisdiction. In so holding, the Court overruled two prior cases that had created equitable, "unique circumstances" exceptions to the statute prescribing the time in which a notice of appeal to a court of appeals must be filed, Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215 (1962), and Thompson v. INS, 375 U.S. 384 (1964).

In Atiqullah, citing Ninth Circuit authorities, we held that the time limit for filing a notice of appeal to the BIA is "mandatory and jurisdictional" except in "unique circumstances," such as when the alien has been misled by the agency into an untimely filing. 39 F.3d at 898. The Ninth Circuit first adopted this "unique circumstances" exception in Hernandez-Rivera v. INS, 630 F.2d 1352, 1354 (9th Cir. 1980), relying entirely on Harris and Thompson, the cases explicitly overruled in Bowles. Likewise, the Ninth Circuit in Oh, 406 F.3d at 613, and the Second Circuit in Sun, 421 F.3d at 109, the decisions that prompted the initial remand in this case, relied on Hernandez-Rivera in superimposing a judicial exception on the BIA's determination of its own jurisdiction. We conclude that, after Bowles, Atiqullah is no longer controlling precedent. Therefore, we must reexamine whether a timely appeal to the BIA is mandatory or jurisdictional, in which case judicial review is procedurally barred by the Liadovs' failure to exhaust with a timely appeal. We did not reach this question in denying the petition for review in Holder v. Gonzales, 499 F.3d 825, 829 n.1 (8th Cir. 2007).

In Bowles, the Supreme Court explained that whether a statutory time limit is jurisdictional is a question of legislative intent because Congress decides when, and under what conditions, federal courts can hear cases. "Because this Court has no authority to create equitable exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." 127 S. Ct. at 2365-66. When dealing with a time limit established by administrative agency regulation, the inquiry is more

layered, but the first question is whether Congress mandated the time limit as a limit on the agency's jurisdiction. If so, then we must enforce the time limit without exception under Bowles. If not, then we must review the agency's declaration that the time limit is "jurisdictional" (or mandatory)[4] under our customary deferential standards for reviewing administrative actions.

**1.** The BIA is not a creature of statute. See INS v. Doherty, 502 U.S. 314, 327 (1992). Its predecessor was established by the Attorney General in 1940, shortly after Congress transferred immigration functions from the Department of Labor to the Department of Justice. See 5 Fed. Reg. 2454 (July 3, 1940). Thus, the BIA's "jurisdiction" is defined by the powers delegated to it by the Attorney General, who has broad power to establish regulations governing immigration proceedings. See 8 U.S.C. § 1103(g)(2); 8 C.F.R. § 1003.1(a)(1). The delegation must of course be consistent with the statutes defining the Attorney General's authority. "Although it is true that 'agencies should be free to fashion their own rules of procedure,' Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc., 435 U.S. 519, 543 (1978), those regulations must be 'reasonably related to the purposes of the enabling legislation.' Mourning v. Family Publications Service, Inc., 411 U.S. 356, 369 (1973)." Oberstar v. FDIC, 987 F.2d 494, 504 (8th Cir. 1993).

Although never explicitly authorized by statute, the BIA's long-standing review of deportation (now removal) orders has not gone unnoticed by Congress.[5] To curb

---

[4]Applying the distinction fashioned in Eberhart, the Tenth Circuit held in Huerta v. Gonzales, 443 F.3d 753, 755-56 (2006), that the time limit in 8 C.F.R. § 1003.38(b) is mandatory but not jurisdictional. We agree.

[5]See H.R. Rep. No. 1365 (1952), reprinted in 1952 U.S.C.C.A.N. 1653, 1687-88: "[The Committee believes] that the Board [of Immigration Appeals] has well served its purpose and has greatly contributed to a fair and equitable administration of justice in immigration, nationality, and naturalization cases. [We refrain] at this time from proposing to change the status of the Board into a statutory body."

perceived abuses, § 545(d) of the Immigration Act of 1990 directed the Attorney General to "issue regulations with respect to . . . (2) the time period for the filing of administrative appeals in deportation proceedings . . . ." Pub. L. 101-649, § 545(d), 104 Stat. 4978, 5066 (1990). The House Conference Report suggests that a mandatory time limit was not intended:

> Unless the Attorney General finds reasonable evidence to the contrary, the regulations must state that administrative appeals be made within 30 days, except that the appellate body may, upon motion, extend such period up to 90 days, if good cause is shown by the movant.

H.R. Rep. No. 101-955 at 133 (1990), as reprinted in 1990 U.S.C.C.A.N. 6710, 6798 (1990). In regulations promulgated in 1992 to implement the 1990 Act, the Attorney General instead maintained the ten day appeal period previously in place. See 57 Fed. Reg. 11568, 11568-70 (Apr. 6, 1992). Given this legislative and administrative history, we do not construe the directive in the 1990 Act as *requiring* the Attorney General to promulgate a mandatory time limit. Cf. Socop-Gonzalez v. INS, 272 F.3d 1176, 1190 (9th Cir. 2001) (en banc).

In the extensive 1996 amendments to the statutes governing asylum, Congress enacted a specific time limit for appeals to the BIA: "any administrative appeal shall be filed within 30 days of a decision granting or denying asylum, or within 30 days of the completion of removal proceedings . . . whichever is later." 8 U.S.C. § 1158(d)(5)(A)(iv).[6] Without question, the statute trumped the ten-day appeal period previously adopted in the regulations. But applying the analysis mandated by Bowles, did Congress also intend that this statutory time limit be mandatory, in other words, not subject to exceptions? In 8 U.S.C. § 1158(a)(2)(D), enacted at the same time, Congress provided that an application for asylum must be filed within one year of

---

[6]See Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 604(d)(5)(A)(iv), 110 Stat. 3009-546, 3009-694 (1996).

arrival absent "extraordinary circumstances relating to the delay." There is no such statutory exception in § 1158(d)(5)(A)(iv). On the other hand, this time limit for asylum appeals does not apply to administrative appeals from the denial of withholding of removal or relief under the CAT. See Khan v. U.S. Dep't of Justice, 494 F.3d 255, 258-59 (2d Cir. 2007). As all asylum applications are deemed by the agency to include a request for withholding of removal, 8 C.F.R. § 1208.3(b), it makes little sense to construe § 1158(d)(5)(A)(iv) as a mandatory directive after concluding that Congress in 1990 did not intend to otherwise constrain the Attorney General's procedural discretion in this fashion. Though the question is not free from doubt, we conclude that Congress did not intend a mandatory directive; therefore, we must examine the BIA's jurisdictional ruling from the familiar perspective of whether it was an abuse of the agency's discretion to resolve procedural issues "not governed by specific statutory commands." INS v. Abudu, 485 U.S. 94, 110 (1988).

**2.** An agency's interpretation of its procedural regulations is entitled to substantial deference so long as it reflects a "permissible interpretation" of the governing statute. Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 866 (8th Cir. 2002). The BIA has declared for more than fifty years that the regulation prescribing the time within which an administrative appeal must be filed, now found at 8 C.F.R. § 1003.38(b), is mandatory and may not be extended by the BIA. See Dirphys, 3 I & N Dec. at 224. The Supreme Court has approved the adoption of strict filing deadlines in other contexts:

> Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.

United States v. Locke, 471 U.S. 84, 101 (1985). Moreover, Congress in recent years has taken repeated action to expedite removal proceedings and curb perceived abuses, reinforcing the presumption that the Attorney General is acting in accordance with his

legislative mandate when he imposes time limits for exhaustion that serve the agency's interests in effective and efficient administration. Cf. Weinberger v. Salfi, 422 U.S. 749, 766 (1975). Accordingly, if the BIA on behalf of the Attorney General construes this regulation as a truly mandatory time limit (regardless of whether it is also "jurisdictional"), this is not an abuse of the agency's substantial procedural discretion, absent a due process violation in a particular case. Thus, the relevant question is whether the BIA construes this regulatory time limit as truly mandatory.

**3.** Beginning with regulations promulgated under the Immigration and Nationality Act of 1952, the agency has reserved the powers (i) to certify deportation and removal cases to itself, and (ii) to "reopen or reconsider on its own motion any case in which it has rendered a decision." 8 C.F.R. §§ 1003.1(c), 1003.2(a), published as 8 C.F.R. §§ 3.1(c) and 3.2 in 23 Fed. Reg. No. 231, at 9117-18 (Nov. 26, 1958). These regulations -- § 1003.1(c) and § 1003.2(a) -- apply to a broad universe of cases subject to the BIA's jurisdiction, and the agency has invoked them, though infrequently, in disparate situations. For example, in In re Slade, 10 I & N Dec. 128 (BIA 1962), the BIA took jurisdiction of an untimely appeal by certification "in view of the importance of the issue" involving a new section of the INA. In In re Chavarri-Alva, 14 I & N Dec. 298 (BIA 1973), the BIA refused to self-certify so as to restore an expired voluntary departure privilege because its review of the record demonstrated that the untimely appeal had "no merit." On the other hand, in In re Iberia Airlines Flight No. 1B 951, 19 I & N Dec. 768 (BIA 1988), the BIA granted certification and sustained the untimely appeal of a foreign air carrier from an order imposing administrative fines.

In In re J-J, 21 I & N Dec. 976, 984 (BIA 1997), the BIA stated that it has "limited" discretionary power to reopen or reconsider cases on its own motion under § 1003.2(a), but cautioned that this power "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations." In this case, the BIA relied on J-J in stating that it may certify a case to itself under § 1003.1(c) in

"exceptional circumstances," thus confirming that the two regulations serve complementary purposes. Liadov, 23 I & N Dec. at 993. In addition to relying on the judicial "unique circumstances" doctrine of Atiqullah, the Liadovs argue that the BIA abused its discretion in refusing to apply its own "exceptional circumstances" exception to excuse their untimely filing. The government responds that we "lack jurisdiction to review" the BIA's refusal to certify this case to itself under § 1003.1(c) because that decision is "committed to agency discretion" and the regulation "provides no meaningful standard" for measuring the agency's exercise of discretion. See generally 5 U.S.C. § 701(a)(2); Heckler v. Chaney, 470 U.S. 821, 830 (1985).

The en banc court recently reviewed a BIA order refusing to exercise its discretion under 8 C.F.R. § 1003.2(a) to reopen a proceeding *sua sponte* in response to an alien's untimely motion to reopen. Based upon (1) the total absence of statutory standards, (2) the absence of meaningful guidance for applying the "exceptional circumstances" standard in the regulation to the variety of circumstances in which the BIA may invoke or may be asked to invoke this discretionary power, and (3) the absence of a "settled course of adjudication" that could establish a meaningful standard, we joined ten other circuits in holding that the order was an unreviewable action committed to agency discretion by law. Tamenut v. Mukasey, ___ F.3d ___, No. 05-4418, Slip op. at 6-8 (8th Cir. Mar. 11, 2008).

In this case, we consider the BIA's refusal to invoke 8 C.F.R. § 1003.1(c), the complementary self-certification regulation, in response to the Liadovs' *timely* motion to reopen. The effect of this ruling is to bar judicial review of the removal order because of the Liadovs' failure to exhaust this administrative remedy. Thus, the situation is different than in Tamenut, where the alien's right to judicial review of the final order of removal had expired. Had the BIA declared that the time limit in § 1003.38(b) is non-mandatory and subject to an exception for "extraordinary circumstances," we would review whether its decision not to invoke the exception in a particular case was arbitrary and capricious. See Lara v. Trominski, 216 F.3d 487,

497-98 (5th Cir. 2000); <u>Oberstar</u>, 987 F.2d at 504; <u>Union Flights, Inc. v. Administrator, FAA</u>, 957 F.2d 685, 687-88 (9th Cir. 1992). The review would be conducted, not under the judicially-created "unique circumstances" doctrine, but for abuse of the agency's discretion in applying its own exception to a non-mandatory time limit. However, both the BIA and the Attorney General have steadfastly maintained that the time limit is mandatory, and the BIA's reference to its self-certification authority in this case was a reaction to the unwarranted judicial demand for an exception imposed by <u>Oh</u> and <u>Sun</u> rather than a change of agency position. Therefore, the refusal to self-certify may not be reviewed on the ground that the agency itself treats the appeal time limit as non-mandatory.

If the BIA continues to maintain that its appeal time limit is mandatory but routinely considers whether to use its self-certification authority to revive an untimely appeal because of "extraordinary circumstances," there might well develop a "settled course of adjudication" that would provide a meaningful standard and thereby make the agency's refusal to self-certify *in this context* judicially reviewable under the <u>Heckler v. Chaney</u> line of cases. <u>See</u> <u>Calle-Vujiles v. Ashcroft</u>, 320 F.3d 472, 475 (3d Cir. 2003); <u>see also</u> <u>INS v. Yueh-Shaio Yang</u>, 519 U.S. 26, 32 (1996). But there is no such settled course at this time. Thus, under <u>Tamenut</u>, the BIA's refusal to self-certify was an unreviewable action committed to the agency's discretion.

**C.** Alternatively, if the BIA's order refusing to self-certify is subject to judicial review, we conclude there was no abuse of discretion. The Liadovs contend that the BIA abused its discretion by failing to certify the case to itself because the failure of a courier to meet its contractual commitment of next-day delivery was an "exceptional circumstance" warranting relief under 8 C.F.R. § 1003.1(c). Noting the Supreme Court upheld strict enforcement of filing deadlines in <u>Locke</u>, the BIA rejected this argument, explaining:

-11-

[A]lthough a delivery delay might excuse untimeliness in a rare case, such as where the delivery was very late or caused by 'rare' circumstances, the [BIA] *Practice Manual* makes clear that, in general, such delays do not affect deadlines. The parties cannot point to such delays to excuse untimely filings, but should instead anticipate the possibility that the guaranteed delivery might fail. In a case such as the one before us, where the appeal was placed with an overnight courier service, at most, 48 hours before the filing deadline, we do not find the fact that delivery was a day or 2 past the 'guaranteed' date to be a 'rare' circumstance that would excuse the late filing. Such delays are not 'extraordinary' events.

Meaningful filing deadlines are as critical to the smooth and fair administration of the Board as they are to the courts, particularly given the extraordinary volume of appeals, motions, and other filings that must be efficiently processed, tracked, and adjudicated. In 1996, recognizing the importance of both enforcing such deadlines and simultaneously allowing the parties sufficient time to file appeals, we extended the deadline for filing appeals from 10 days to 30 days. . . . This is a fair and generous filing period and one that the parties must take seriously. The filing time was not extended to simply 'push the window' of last-minute filings 20 days forward.

Liadov, 23 I & N Dec. at 992. This is a reasonable application of a filing deadline that Congress in 1990 directed the agency to adopt to curb abusive delays in removal proceedings. We have invoked the judicially-created "unique circumstances" doctrine to justify a late-filed appeal when the alien was "misled by the words or conduct of the court." Atiqullah, 39 F.3d at 898; see Omao v. Gonzales, 185 Fed. App'x 562, 562-63 (8th Cir. 2006) (unpublished). Seeking to come within the purview of those cases, the Liadovs argue they were misled by the BIA Practice Manual's recommendation that appellants use overnight delivery services to ensure timely filings. But even if Atiqullah remained good law, the shoe will not fit. The Practice Manual unambiguously states that "the failure of a courier or overnight delivery service does not excuse parties from meeting filing deadlines," § 3.1(a)(iv), and that

-12-

"[p]ostal or delivery delays do not affect existing deadlines, nor does the Board excuse untimeliness due to such delays, except in rare circumstances," § 3.1(b)(iv). Thus, the failure of a courier to make timely delivery is not "an extraordinary circumstance that would justify intervention by this court into the Board's exercise of discretion." Anssari-Gharachedaghy v. INS, 246 F.3d 512, 515 (6th Cir. 2000).

## II. Due Process

Finally, the Liadovs argue that the BIA's filing deadline and self-certification procedure violated their rights to due process because a procedure that does not forgive excusable overnight delivery delays denies alien appellants a meaningful opportunity to be heard. We disagree. In Talamantes-Penalver v. INS, 51 F.3d 133 (8th Cir. 1995), we rejected a claim that the prior ten-day time limit for filing appeals to the BIA violated due process. As the BIA noted, by increasing the time limit to thirty days, the agency acted to ensure that aliens have sufficient time to appeal. In Holder, 499 F.3d at 829-30, we rejected a due process attack on the current procedure by an alien whose notice of appeal to the BIA was filed one day late because he transposed two zip code numbers on the mailing label of his last-minute filing. Here, the last-minute filing was delayed by a courier hired by the petitioners. The difference has no due process significance. Holder is controlling. The Liadovs' reliance on United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), is misplaced. That case involved a failure by the BIA to exercise its discretion, not "the manner in which discretion was exercised." 347 U.S. at 268.

The petition for review is denied.

COLLOTON, Circuit Judge, concurring in part.

I conclude that the BIA's decision whether to assert jurisdiction by certification pursuant to 8 C.F.R. § 1003.1(c) is committed to agency discretion by law, because

there is "no law to apply." *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *Tamenut v. Mukasey*, No. 05-4418, slip op. at 8 (8th Cir. Mar. 11, 2008) (en banc) (per curiam); *see also Mahamat v. Gonzales*, 430 F.3d 1281, 1284 (10th Cir. 2005); *Saldana-German v. Ashcroft*, 116 F. App'x 927 (9th Cir. 2004). I therefore agree with the ultimate conclusion reached in Parts I.B.2 and 3 of the opinion of the court. Insofar as Liadov seeks judicial review of the BIA's refusal to certify his case, I would dismiss the petition for lack of jurisdiction. *See ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 282 (1987) (describing 5 U.S.C. § 701(a)(2) as a "limitation to the general grant of jurisdiction contained in 28 U.S.C. § 1331"). I agree with Part II of the opinion, concluding that Liadov's due process claim is without merit, and I concur in the denial of the petition for review on that point.

I decline to join Part I.B.1 of the opinion, which states that the 30-day statutory time limit for filing an administrative appeal in an asylum case is not "jurisdictional" within the meaning of *Bowles v. Russell*, 127 S. Ct. 2360, 2366 (2007). As in *Holder v. Gonzales*, 499 F.3d 825, 829 n.1 (8th Cir. 2007), it is unnecessary to decide that question, because the BIA has maintained steadfastly that the time limit *is mandatory*, and dismissed Liadov's administrative appeal on that basis. The court's analysis also strikes me as unconvincing. Congress in 1996 directed that the Attorney General establish a time limit for asylum appeals, with no mention of exceptions: "[A]ny administrative appeal shall be filed within 30 days of a decision granting or denying asylum." 8 U.S.C. § 1158(d)(5)(A)(iv). *Cf. Bowles*, 127 S. Ct. at 2366 ("[W]hen an appeal has not been prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction.") (internal quotation omitted). That a congressional committee report, pertaining to legislation enacted by a different Congress six years earlier, expressed desire that the Attorney General establish a non-mandatory time limit gives little reason to doubt the mandatory language of the text of the 1996 statute. *See Waterkeeper Alliance, Inc. v. EPA*, 399 F.3d 486, 508 (2d Cir. 2005) ("[P]rior legislative history is a hazardous basis for inferring the intent of a subsequent Congress."). Nor does the fact that the Justice

Department deems asylum applications also to be requests for withholding of removal, *see* 8 C.F.R. § 1208.3(b), principally to avoid duplication of effort, *see* Filing of Asylum Requests After Commencement or Completion of Deportation Proceedings, 43 Fed. Reg. 40879 (proposed Sept. 13, 1978), make it illogical for Congress in 1996 to have enacted a limitation on the agency's jurisdiction with respect only to the timing of asylum appeals.  Congress need not address all problems at once.  And it is not implausible that Congress may have wanted the Attorney General to retain greater flexibility in fashioning regulatory time limits applicable to aliens who purport to meet the higher standard for withholding of removal.  I would therefore leave this question for a case in which it is necessary to the decision.

_____