# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3506
No. 17-2089

_____

Leslie Lyle Camick

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

------------------------------------------

National Immigration Project of the National Lawyers Guild

*Amicus on Behalf of Petitioner*

_____

Petition for Review of Orders of the
Board of Immigration Appeals

_____

Submitted: February 15, 2018
Filed: June 8, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Leslie Lyle Camick, a Canadian native and citizen, petitions for review of two decisions of the Board of Immigration Appeals (BIA): in No. 16-3506, the BIA's decision dismissing his appeal from the Immigration Judge's (IJ's) decision granting voluntary departure with an alternate order of removal; in No. 17-2089, the BIA's order denying reconsideration of the first decision. We deny both petitions.

## I. Background.

Camick entered the United States in 2006 using the name and birth certificate of his deceased younger brother. In 2011, represented by counsel, Camick conceded removability at a hearing before an Immigration Judge (IJ) in New Jersey, admitting that he was removable for procuring admission by misrepresentation and lacking valid entry documents. Removal proceedings were suspended when Camick was detained in the District of Kansas on criminal charges related to use of his brother's identity. A jury convicted Camick on all counts; the Tenth Circuit Court of Appeals affirmed an obstruction of justice conviction but reversed the other counts. United States v. Camick, 796 F.3d 1206, 1212-13, 1222-23 (10th Cir.), cert. denied, 136 S. Ct. 601 (2015).

After Camick was released from custody in the criminal proceedings, the Department of Homeland Security (DHS) detained him in Kansas. In December 2015, a New Jersey IJ granted the government's motion to change venue of the removal proceedings to Kansas City, Missouri. Camick appeared pro se before a Kansas City IJ in January 2016. He stated he was pursuing three avenues for relief from removal and requested release from DHS custody under a reduced bond. The IJ set bond in the amount of $7,500 and scheduled a removal hearing for February 11; both parties waived appeal of that ruling. At the end of the hearing, the IJ commented to Camick, "you're not the typical pro se litigant, sir. You've had a lot of practice it

-2-

seems." He replied, "Yes, absolutely. I've been an avid student of Immigration law for the past four years now."[1]

At the February 11 hearing, Camick had not obtained relief from removal. After the IJ declined his request for work authorization, Camick said he now could not afford a $7,500 bond. The government opposed a continuance, urging the IJ to enter an order of removal unless Camick requested voluntary departure, noting he could pursue a nonimmigrant visa application after removal to Canada. The IJ asked Camick if he would be interested in "pre-conclusion" voluntary departure. The IJ explained this would allow him to depart the United States without a removal order and return immediately if he secured a visa, avoiding the ten-year bar on reentering the United States after removal, but he would have to "waive appeal today of all issues." Camick accepted pre-conclusion voluntary departure and advised he would have the needed travel funds arranged from Canada. The government stated it would waive appeal of this ruling. The IJ declared, "it's now a final decision." The IJ issued a written order granting Camick voluntary departure, giving him until March 3, 2016 to depart, entering an alternate order of removal to Canada, and stating that both parties had waived appeal. Court staff served the order on Camick the same day, February 11.

Camick did not voluntarily depart on March 3. He did not ask the IJ for more time to do so, see 8 C.F.R. § 1240.26(e) (IJ may grant up to 120 days for pre-

---

[1]Camick's pro se pleadings and arguments to the IJ, to the BIA, and to this court, and his counseled briefs in the second petition for review, repeatedly state that he is entitled to special treatment as a pro se litigant dealing with the complex world of immigration law. We reject these entreaties because they are factually without merit. Our review of Camick's pro se pleadings, briefs, substantive arguments, and procedural maneuvers convince us that, as he told the IJ in January 2016 (before agreeing on February 11 to the pre-conclusion voluntary departure order at issue), he is a pro se litigant who was remarkably well versed in immigration law and practice.

conclusion voluntary departure), nor file a motion to reopen or reconsider the grant of voluntary departure, see 8 C.F.R. § 1240.26(e)(1).[2] On March 3, DHS served Camick a Warning for Failure to Depart, Form I-229(a), listing February 18, 2016, as the date the Kansas City IJ's order of removal became final.[3] On March 12, Camick delivered a notice of appeal of the IJ's February 11 decision to detention facility officials for mailing to the BIA. In a lengthy brief, he withdrew his concession of removability and consent to voluntary departure, challenged the change of venue to Kansas City, asserted he was entitled to interim work authorization, and claimed his New Jersey attorney was ineffective for "failing to proficiently analyze his immigration case and . . . actively pursue a defense." He accused the detention facility of impermissibly limiting his right to make photocopies and stated he was confused about whether the thirty days to file a notice of appeal did not begin until February 18, based on the Form I-229(a) Warning. The BIA received the notice of appeal on March 17. Camick was removed to Canada on March 23.

_____

[2]On March 1, Camick filed with the immigration court a Notice of Withdrawal of Consent to Voluntary Departure, based upon the failure of DHS to deliver his birth certificate that was seized when he was arrested in March 2013, which made him unable to apply for a Canadian passport needed to voluntarily depart. There is no authority in the Immigration and Nationality Act (INA) or in the Attorney General's regulations for an alien to unilaterally withdraw from a pre-conclusion voluntary departure order. Camick did not apply to the IJ or BIA for more time to depart, or file a motion to reopen or reconsider the voluntary departure order before the departure period expired, the proper way to assert his claim that the appeal waiver was invalid because the IJ did not adequately explain it. See 8 C.F.R. § 1240.26(e)(1). The Notice of Withdrawal had no substantive or procedural validity, so we disregard it.

[3]February 18 was the day Camick petitioned the Third Circuit for review of the New Jersey IJ's venue order. Filing any judicial challenge to a voluntary departure order terminates the grant of voluntary departure; the alternate order of removal "shall immediately take effect," but that does not affect "the date that the [voluntary departure] order . . . became administratively final." 8 C.F.R. § 1240.26(i). The Third Circuit dismissed Camick's petition for lack of jurisdiction. See Order, Camick v. Attorney Gen. of the U.S., No. 16-1355 (3d Cir. Apr. 28, 2016).

-4-

On July 28, 2016, the BIA dismissed Camick's appeal for three reasons: (i) he waived his right to appeal the IJ's decision at the February 11 removal hearing; (ii) his ineffective-assistance claim did not comply with the requirements of Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988); and (iii) the appeal was untimely because the IJ's voluntary departure and alternative removal order became final for appeal purposes with the IJ's February 11 decision, and Camick's notice of appeal was received by the BIA on March 17, more than thirty days later. Camick timely filed a pro se petition for review of the BIA decision in this court and a pro se motion to reconsider with the BIA. Both filings attacked the three reasons given by the BIA in dismissing the appeal. In the motion to reconsider, Camick argued the BIA "should in good faith and fair play, accept the Appeal of March 12/17, 2016 by Certification."

The BIA denied the motion to reconsider. The BIA agreed with Camick that he did not knowingly waive his right to appeal but concluded that any error in concluding otherwise was not material because Camick's appeal was untimely. After expressly considering Camick's allegations that the detention facility impermissibly denied him photocopy and law library access and delayed mailing his notice of appeal, the BIA concluded that Camick failed to establish it should exercise its self-certification authority to accept Camick's appeal. See 8 C.F.R. § 1003.1(c).[4] The BIA denied reconsideration of the ineffective assistance claim because Camick "has not explained how the attorney's representation is relevant to his motion" to reconsider dismissal of his appeal from the February 2016 voluntary departure/removal order.[5]

---

[4]In Liadov v. Mukasey, we held that we lack jurisdiction to review the BIA's discretionary refusal to self-certify because "the [self-certification] regulation provides no meaningful standard for measuring the agency's exercise of discretion." 518 F.3d 1003, 1010 (8th Cir. 2008) (quotation omitted); accord Park v. Attorney Gen. of the U.S., 846 F.3d 645, 653 (3d Cir. 2017).

[5]Counsel petitioned to withdraw from representing Camick in January 2014, which a New Jersey IJ granted. In his motion to withdraw, counsel cited challenges

-5-

Camick filed a separate petition for review of the denial of reconsideration. We consolidated these two petitions for review, as the INA mandates. See 8 U.S.C. § 1252(b)(6); Stone v. I.N.S., 514 U.S. 386, 405-06 (1995). Because Camick petitioned for review of the initial decision, our review is not limited to whether the denial of reconsideration was an abuse of discretion. See Boudaguian v. Ashcroft, 376 F.3d 825, 828 (8th Cir. 2004). However, a motion to reconsider, unlike a motion to reopen, is based upon "errors of fact or law in the prior Board decision." 8 C.F.R. § 1003.2(b)(1). Thus, the issues presented in the two petitions for review necessarily overlap, and we will treat the BIA's opinion denying reconsideration as a further explication of its initial decision.

In the petitions for review, Camick argues the BIA should have equitably tolled the filing deadline, or accepted his appeal by self-certification, because he exercised diligence in filing a timely appeal, and circumstances beyond his control explained his late filing. He argues we must remand to the BIA because it did not address his vague invocation of the "doctrine of Equitable Tolling" in its orders.[6] Alternatively, he argues his appeal was timely because the thirty-day filing period began on February 18, 2016, when he petitioned for review of the New Jersey IJ's venue order.

---

to representing Camick arising from his criminal charges and alleged that Camick wished to pursue inapplicable forms of relief and failed to pay the attorney.

[6]This argument is based on the assertion that the filing deadline in 8 C.F.R. § 1003.38(b) is "non-jurisdictional and thus not mandatory." In Liadov, we stated that the BIA has considered the deadline mandatory for more than fifty years, and we ruled that this was not an abuse of discretion. 518 F.3d at 1009-10. Here, by relying on its decision in Matter of Liadov, 23 I. & N. Dec. 990 (BIA 2006), which we affirmed, the BIA expressed its continued view that the filing deadline is mandatory and the BIA will accept untimely appeals only under its discretionary self-certification authority. See Liadov, 518 F.3d at 1009-11. The BIA had no obligation to further reiterate its consistent position.

Camick also argues the BIA erred in denying his motion to reconsider the denial of his claim that his New Jersey counsel provided ineffective assistance.

## II. Judicial Review of Voluntary Departure Orders.

"Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found deportable—to leave the country willingly." Dada v. Mukasey, 554 U.S. 1, 8 (2008). Voluntary departure "allows the Government and the alien to agree upon a *quid pro quo*." Id. at 11. The government benefits from an expedited, less expensive departure process and avoids departure litigation. The alien avoids detention while removal travel is arranged, can select the country of destination, and "of great importance, by departing voluntarily . . . facilitates the possibility of readmission." Id. "Upon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the immigration judge shall also enter an alternate order o[f] removal." 8 C.F.R. § 1240.26(d).

This case involves a pre-conclusion voluntary departure order authorized by 8 U.S.C. § 1229c(a). The entry of such an order is a final "decision" of the IJ, which in a removal proceeding must include "a finding as to . . . deportability." 8 C.F.R. § 1240.12(a). To establish a basis for a final decision, the Attorney General's regulations set forth preconditions that must be satisfied before the IJ may enter a pre-conclusion voluntary departure order:

> (1) the voluntary departure request must be made prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing; (2) the alien must not seek any other form of relief and must withdraw any outstanding requests for relief; (3) the alien must concede removability; (4) the alien must waive appeal of all issues; and (5) the alien must not have been convicted of certain crimes.

In re Ocampo-Ugalde, 22 I. & N. Dec. 1301, 1303 (BIA 2000); see 8 C.F.R. 1240.26(b)(1)(i). "Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39; see Kohwarien v. Holder, 635 F.3d 174, 179 (5th Cir. 2011).

The immigration laws grant courts of appeals exclusive jurisdiction to review a "final order of removal." 8 U.S.C. § 1252(a)(1), (5). An order of removal is the order of an officer to whom the Attorney General has delegated authority "concluding that the alien is [removable] or ordering [removal]." § 1101(a)(47)(A). It is well established that a conditional order of removal unless the alien departs within the voluntary departure deadline is, when entered, a judicially reviewable final order of removal. Foti v. I.N.S., 375 U.S. 217, 219 n.1 (1963). "Congress granted power to the courts of appeals to review final orders of removal, not the enforcement of final orders of removal." Casillas v. Holder, 656 F.3d 273, 275 (6th Cir. 2011). "[T]he 'final' order might do no more than establish that the alien is removable . . . . [V]oluntary departure . . . has no effect at all on the removability of the alien—it affects only the manner of [his] exit." Almutairi v. Holder, 722 F.3d 996, 1001 (7th Cir. 2013). Indeed, "a court of appeals lacks jurisdiction to entertain a request to reinstate voluntary departure." Ngarurih v. Ashcroft, 371 F.3d 182, 193 (4th Cir. 2004); see 8 U.S.C. § 1252(a)(2)(B) ("no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 1229c").

## III. Discussion.

The focus of Camick's petitions for review is the BIA's decision to dismiss his direct appeal from the IJ's administratively final pre-conclusion voluntary departure order because the appeal was not timely filed under the Attorney General's procedural regulations. See 8 C.F.R. § 1003.38(b) ("The Notice of Appeal . . . shall be filed directly with the [BIA] within 30 calendar days after the stating of an [IJ's] oral

decision or the mailing of an [IJ's] written decision."); 8 C.F.R. § 1003.3(a)(1) ("An appeal is not properly filed unless it is received at the Board . . . within the time specified in [§ 1003.38]."). We have jurisdiction to review this question of law under 8 U.S.C. § 1252(a)(2)(D). In deciding most petitions to review BIA decisions, this is a critical issue because "an alien whose appeal to the BIA was dismissed as untimely is precluded from judicial review of the merits of the removal order because he failed to properly exhaust an available administrative remedy." Liadov, 518 F.3d at 1006. However, in the unique circumstances of this voluntary departure order, we conclude that the answer to the untimely appeal question is immaterial to our decision to deny Camick's petitions for review.

In Dada, the Supreme Court considered whether an alien who agreed to a *post-conclusion* voluntary departure order "must adhere to that election and depart within the time prescribed, even if doing so causes the alien to forgo a ruling on a pending, unresolved motion to reopen the removal proceedings." 554 U.S. at 4. The alien sought to withdraw his request for voluntary departure two days before expiration of the voluntary departure period. Id. at 6. Resolving a conflict in the circuits, the Court held that the alien was entitled to limited relief from this dilemma:

> We hold that, to safeguard the right to pursue a motion to reopen for voluntary departure recipients, the alien must be permitted to withdraw, unilaterally, a voluntary departure request before expiration of the departure period, without regard to the underlying merits of the motion to reopen. As a result, the alien has the option either to abide by the terms, and receive the agreed-upon benefits, of voluntary departure; or, alternatively, to forgo those benefits and remain in the United States to pursue an administrative motion.
>
> If the alien selects the latter option, he or she gives up the possibility of readmission and becomes subject to the IJ's alternative order of removal. See 8 CFR § 1240.26(d).

Id. at 21. The Court explained: "the rule we adopt does not alter the *quid pro quo* between the Government and the alien. If withdrawal is requested prior to expiration of the voluntary departure period, the alien has not received benefits without costs; the alien who withdraws . . . is in the same position as an alien who was not granted voluntary departure in the first instance." Id. at 21-22.

We conclude the Court would apply these same principles to the somewhat different circumstances surrounding a *pre-conclusion* voluntary departure order. In this situation, the IJ has not entered a final order of removal; rather, the alien has conceded removability and waived all defenses and requests for relief from removal. The BIA has not affirmed the IJ's order because the alien waived his right to appeal it. But the consequences of the alien failing to depart voluntarily in the time allowed are the same for both pre-conclusion and post-conclusion orders: "An order of removal made by the immigration judge at the conclusion of [removal] proceedings . . . shall become final . . . (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, *upon overstay of the voluntary departure period*." 8 C.F.R. § 1241.1(f) (emphasis added); see Casillas, 656 F.3d at 276.

Like the alien who agreed to a post-conclusion voluntary departure order in Dada, there were procedures available to Camick to withdraw from his pre-conclusion order while it was still executory, that is, before expiration of the voluntary departure period. Most commonly, an alien who concludes that the process was procedurally unfair will file a motion with the IJ or a timely appeal to the BIA alleging that the appeal waiver was not knowing or voluntary. If he prevails, the BIA may remand to the IJ to permit the respondent to reapply for voluntary departure, or to "entertain other requests for relief" should the alien not seek voluntary departure. Ocampo, 22 I. & N. Dec. at 1305 & n.3; compare In re Rodriguez-Diaz, 22 I. & N. Dec. 1320, 1323-24 (BIA 2000). Alternatively, the alien may ask the IJ or BIA to extend the voluntary departure period up to the maximum 120 days. 8 C.F.R. § 1240.26(e)(1).

-10-

By contrast, when an alien who agreed to a pre-conclusion or post-conclusion voluntary departure order overstays the voluntary departure period, his agreement with the government is no longer executory -- he has received the voluntary departure benefit offered, and the government is entitled to enforce its side of the bargain, the alternative removal order. Here, Camick made no valid attempt to withdraw from the executory pre-conclusion order by challenging the appeal waiver or seeking rescission on some other ground. After overstaying the allowed voluntary departure period to which he agreed, he filed a lengthy appeal to the BIA challenging the merits of the alternative removal order. But by that time, the alternative order was effective and enforceable, and all challenges to the merits of that order were foreclosed by Camick's concession of removability and waiver of all issues in a pre-conclusion voluntary departure order that was no longer executory. As the Supreme Court said in Dada, "among the substantive burdens imposed upon the alien when selecting voluntary departure is the obligation to arrange for departure, *and actually depart*, within the [prescribed] period." 554 U.S. at 19 (emphasis added).

In these circumstances, we conclude that Camick's belated appeal to the BIA was untimely because it was filed after termination of the voluntary departure period, whether or not it was timely filed under the BIA's procedural regulations. Therefore, any error by the BIA in not taking up this futile appeal of the alternative removal order on the merits was harmless, and the petitions for judicial review must be denied. "Congress' intent in adopting and then amending the INA was to expedite both the initiation and the completion of the judicial review process." Stone, 514 U.S. at 400.

The petitions for review are denied.

_____